IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY WATKINS, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> SOUTH SUBURBAN MAJOR CRIMES ) <br> TASK FORCE, VILLAGE OF BURNHAM, ) <br> CITY OF OAK FOREST, VILLAGE OF ) <br> DOLTON, JOHN DALEY, NICK NOMIKOS, ) <br> JOSE NEVAREZ, TIMOTHY GAINER, ) <br> MATTHEW GAINER, RAMIRO MONTES, ) <br> ANTHONY DELGADILLO, MAJOR ) <br> COLEMAN, CHARLES LEYDEN, ) <br> THOMAS ASHE, DOMINICA TOLBERT, ) <br> ERASMO RODRIGUEZ, KEITH ) <br> WILLOUGHBY, ANTONIO PADRON, ) <br> DARRYL HOPE, CHANTO IVERSON, ) <br> MICHAEL VARKALIS, KURT MESSER, ) <br> WILLIAM ALEXANDER, ) <br> RANDALL ZIVKOVICH, TIMOTHY ) <br> BOLIN, STEVEN BOWEN, PETER BELOS, ) <br> CITY OF CALUMET PARK, VILLAGE OF ) <br> RIVERDALE, CITY OF MARKHAM, CITY ) <br> OF BLUE ISLAND, VILLAGE OF SOUTH ) <br> HOLLAND, VILLAGE OF LANSING, ) <br> VILLAGE OF POSEN, AND CITY OF ) <br> CALUMET CITY ) <br> Defendants. ) | Case No. 24-CV-3555 <br><br> Hon. Sunil R. Harjani <br><br> Mag. Judge Heather K. McShain |

**DEFENDANTS DOMINICA TOLBERT'S AND CITY OF MARKHAM'S REPLY TO RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendants City of Markham ("Markham") and Dominica Tolbert ("Tolbert") by their attorneys, Eydie R. Glassman and Steven A. Marderosian, as their Reply in support of their Motion to Dismiss Plaintiff's Amended Complaint ("Complaint"), under FRCP 12(b)(6), state as follows:

A. <u>Plaintiff's Group Pleading Approach Fails To Satisfy Rule 8's Requirements.</u>

Federal pleading standards require that each defendant receive fair notice of the specific claims against them. While some courts have permitted limited group pleading in narrow circumstances, such pleading remains insufficient where, as here, it fails to provide individual defendants notice of their alleged misconduct.

1. Plaintiff's Wholesale Group Pleading Against 24 Officers from Multiple Jurisdictions Is Unprecedented and Improper.

The fundamental issue is whether Plaintiff's broad allegations against all "Defendant Officers" can collectively satisfy Rule 8's notice requirements. The cases Plaintiff relies upon demonstrate that group pleading is permissible only in very limited circumstances.

Plaintiff attempts to justify his wholesale group pleading by citing cases that are materially distinguishable from the case at hand. Most of these cases, where group pleading is permissible, involve small numbers of officers from a single department engaging in discrete incidents. *See, e.g., Olson v. Champaign Cnty*, 784 F.3d 1093, 1098, 1100-04 (7th Cir. 2015) (2 officers from same department gave false info and 1 prosecutor verified same); *Jones v. City of Chicago*, No. 23 CV 4975, 2024 WL 4753687, at *2 (N.D. Ill. Nov. 12, 2024) (4 officers in same department); *Hill v. Cook Cnty.*, 463 F. Supp. 3d 820, 829, 836 (N.D. Ill. 2020) (5 officers of a single investigation team within same department); *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (affirming summary judgment for defendants and noting in *dicta* that allegations against 4 officers from the same department for committing the distinct act of damaging property might have been sufficient to defeat a motion to dismiss earlier in the case); *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (3 officers in same department "were mere feet away" from unlawful acts by other officers but failed to intervene); *Jordan v. City of Chicago*, No. 20- cv-4012, 2021 WL 1962385, *2-4 (N.D. Ill. May 17, 2021) (4 officers in same department fabricated story in reports and testimony).

Even cases involving slightly larger groups remain distinguishable as they typically involved officers from a single department working in concert. *See, e.g.*, *Robles v. City of Chicago*, 354 F. Supp. 3d 873, 875 (N.D. Ill. 2019) (11 officers in 1 police unit "organiz[ing] a plan" distinguished from cases where "numerous unaffiliated officers arrive at a scene independently and then engage by assignment or on their own"); *Fulton v. Bartik*, 547 F. Supp. 3d 799, 811 (N.D. Ill. 2021) (13 officers from same department, where specified acts by different groups were broken down into different counts and where defendants failed to assert that the mere number of defendants in a group rendered allegations implausible); *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 821 (7th Cir. 2009) (specified allegations against certain individuals also differentiated between which individuals/groups committed certain acts); *Billman v. Indiana Department of Corrections*, 56 F.3d 785, 789-90 (7th Cir. 1995) (reversing dismissal of complaint as 'frivolous' where *pro se* prison inmate could not have known names of responsible individuals).

Here, in contrast, Plaintiff has named 24 officers from multiple different jurisdictions and agencies, yet fails to specify the role of any individual officer beyond cursory mentions of Officers Daley and Nevarez. (Am. Compl. Dkt. 80 ¶¶ 23-24). Indeed, relevant precedent supports dismissal of such broad group allegations. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 668-69 687 (2009) (affirming dismissal for failure to specify acts by each of 34 FBI agents despite clearly unconstitutional scheme); *Alexander v. U.S.*, 721 F.3d 418, 420-23 (7th Cir. 2013) (specific acts by each of 5 defendants); *Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009) (affirming dismissal because group pleading did not give "notice of what exactly [defendants] might have done" despite differentiating some particular acts committed by specific defendants).The complaint's sweeping approach of attributing every action to all "Defendant

Officers" fails to provide the type of notice that even the most permissive group pleading cases require and therefore warrants dismissal.

    2. Plaintiff's Reliance on *Colbert* Is Misplaced Given His Access to Information About Individual Officers' Roles.

Plaintiff's heavy reliance on *Colbert*, *supra,* 851 F.3d 649, is particularly misplaced given the stark factual differences between the cases. The "potential tension" between individual liability and group pleading that the *Colbert* court acknowledged arose in a unique context – where the plaintiff had been physically removed from the scene while officers allegedly damaged his property during a search, making it impossible for him to identify which officers caused the damage. *Id.* at 657.

The circumstances here are fundamentally different. Unlike the plaintiff in *Colbert*, who had no way to observe or identify the responsible officers, Plaintiff here had access to extensive documentation from his criminal case – including police reports, grand jury testimony, and other materials – that would reveal which officers participated in key events such as witness interviews, report writing, and grand jury testimony. Despite having this information readily available, Plaintiff's complaint opts instead for sweeping allegations against all officers collectively. (Am. Compl. Dkt. 80 at ¶¶ 28-32). This choice to forgo specificity when the information was available distinguishes this case from the legitimate pleading limitations narrowly addressed in *Colbert*.

    3. The Complaint Fails to Satisfy Rule 8's Basic Notice Requirement Even Accepting That Some Group Pleading May be Permissible.

The Complaint falls far short of Rule 8's basic requirement that each defendant receive fair notice of the claims against them. The complaint alleges that "Defendant-Officers" collectively engaged in every aspect of the investigation – from interviewing witnesses to writing

reports to testify before the grand jury – without specifying which officers participated in which activities. (Am. Compl. Dkt 80 at ¶¶ 17, 24, 28-31). This approach is particularly problematic given that the various defendant officers worked for different agencies and likely had distinct roles in the task force. The complaint's failure to distinguish between officers' roles or even identify which officers were present for key events leaves individual defendants guessing as to what misconduct they allegedly committed.

4. Plaintiff's "Direct Participation Or Failure To Intervene" Theory Is Insufficiently Pled.

The Complaint attempts to sweep all defendants into liability by alleging they either directly participated in misconduct or failed to intervene to prevent it. (Am. Compl. Dkt. 80 at ¶ 41). However, this conclusory allegation fails to specify which officers were present for which events, how officers not directly involved could have intervened, or what authority task force members from different jurisdictions had over each other. Unlike cases such as *Fulton, supra,* 547 F. Supp. 3d at 810–11, where the complaint contained specific allegations about how defendants acted together, this complaint merely concludes that officers acted "jointly" without supporting factual allegations.

5. The Complaint Fails To Plead Readily Available Information

While some details may require discovery, basic information about which officers wrote reports, testified, or interviewed witnesses should be known from the criminal case records. Indeed, the complaint demonstrates this by specifically identifying Officers Daley and Nevarez's role in interviewing witness Parks. (Am. Compl. Dkt. 80 ¶¶ 23-24). The failure to provide similar specificity regarding other officers' roles – particularly for documented events like report writing and grand jury testimony – cannot be excused by claiming such information is uniquely within defendants' knowledge.

6. Membership In The Task Force Cannot Substitute For Specific Allegations.

Finally, Plaintiff cannot justify its group pleading approach merely because defendants were members of the same task force. Different officers clearly had different roles at different times throughout the investigation. (Am. Compl. Dkt. 80 ¶¶ 13-14). Without specific allegations about which officers participated in which aspects of the investigation, the complaint fails to provide the notice required by Rule 8, even under the most permissive group pleading standards. As such, Plaintiff's complaint must be dismissed.

B. <u>Plaintiff's Conspiracy Allegations Fail To Meet Basic Pleading Requirements Under The Very Cases He Cites And Relies On.</u>

Plaintiff's conspiracy allegations fail to meet even the basic pleading requirements set forth in the very cases he cites. While Plaintiff correctly notes there is no heightened pleading standard for conspiracy claims, the complaint still must contain sufficient factual content to state a plausible claim.

Plaintiff relies heavily on *Beaman v. Freesmeyer*, 776 F.3d 500 (7th Cir. 2015) (quoting *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988)), which held a plaintiff must allege that "the individuals reached an agreement to deprive him of his constitutional rights, and [that] overt acts in furtherance actually deprived him of those rights." *Id.* at 510 (quoting *Scherer* at 442)). However, Plaintiff's complaint contains no factual allegations suggesting any actual agreement between Tolbert and any other defendant. Instead, the complaint relies solely on conclusory allegations that the defendants collectively "acted jointly and in concert." (Am. Compl. Dkt. 80 at ¶41). Such bare allegations, without any specific facts about when or how any agreement was formed, are insufficient to state a claim.

Plaintiff's reliance on *Boothe v. Sherman*, 66 F. Supp. 3d 1069 (N.D. Ill. 2014) is similarly misplaced. While *Boothe* held that a plaintiff need only indicate "the parties, general

6

purpose, and approximate date," *Id.* At 1078, Plaintiff's complaint fails to meet even this minimal standard. Although the complaint names various defendants, it fails to specify which defendants allegedly conspired together; provides no timeframe for when any agreement was reached; and the only "general purpose" alleged is that defendants worked together on a task force (Am. Compl. Dkt. 80 at ¶14). This is insufficient to establish an agreement to violate constitutional rights. *See e.g. Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (rejecting such undifferentiated group pleading).

The complaint also falls far short of the requirements of *Hill v. Cook Cty.* 463 F. Supp. 3d 820, 836 (N.D. Ill. 2020), as plaintiff interprets the holding, to require mere assertions of the "who, what and when" of the conspiracy. The "who" consists only of undifferentiated allegations against all 24 defendants collectively; the "what" alleges only that the defendants worked on the same investigation; the "when" spans the entire seven-year period of the investigation and prosecution without identifying when any agreement was formed. (Am. Compl. Dkt. 80 at ¶¶15-17, 40). Such vague allegations spanning years of conduct fail to provide the basic notice required by Rule 8.

While Plaintiff cites to *Hill* to argue for minimal pleading requirements, his complaint fails to allege a plausible conspiracy claim. See *Id.* at 834-35 (discussing that conspiracy claims must allege plausible grounds for agreement between defendants) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012)). The complaint contains no facts suggesting any agreement between Tolbert and other defendants. Instead, it relies entirely on conclusory allegations that defendants worked together on a task force, without any specific factual allegations suggesting an actual agreement to violate Plaintiff's rights. See *Curry v. Guzman*, No. 22 C 757, 2024 WL 4027977 at *12 (N.D. Ill. Sep. 3, 2024) ("common knowledge is not the

7

same as agreeing to violate one's rights"). *Id.* (quoting *Mary Jane Sweet Spot, LLC v. City of Blue Island*, No. 22 C 0273, 2024 WL 1363635 at *12 (N.D. Ill. Mar. 29, 2024)).

The mere fact that defendants worked together on a task force does not establish conspiracy liability. As this Court has held, allegations that defendants worked together in an official capacity, without more, cannot sustain a conspiracy claim. *Id. Mary Jane Sweet Spot, LLC* at *12 (N.D. Ill. Mar. 29, 2024) (dismissing conspiracy claim where plaintiff failed to plausibly allege facts supporting a "meeting of the minds").

Because Plaintiff's complaint contains nothing more than conclusory allegations of joint conduct, spanning years, without specific facts showing any agreement between Tolbert and others to violate constitutional rights, the conspiracy claims should be dismissed.

C.     <u>Plaintiff's Failure To Name Markham As A Defendant Within The Limitation Period Cannot Be Saved By Rule 15(c)'s Relation Back Doctrine Where Plaintiff Merely Lacked Knowledge of Tolbert's Employer.</u>

Plaintiff's arguments that the late addition of Markham as a defendant should relate back under Rule 15(c) fail for two distinct reasons: (1) plaintiff's failure to name Markham within the limitations period was due to lack of knowledge rather than mistake, and (2) timely suing Tolbert/Sims in her individual capacity does not cure the untimely addition of her municipal employer.

The law is clear that Rule 15(c) permits relation back only where "there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake." *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998) (quoting *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir. 1993) (quoting *Wood v. Worachek,* 618 F.2d 1225, 1230 (7th Cir. 1980))). The rule "does not permit relation back where...there is a lack of knowledge of the proper party." *Id*. (quoting *Delgado-Brunet v. Clark,* 93 F.3d 339, 344

8

(7th Cir. 1996)). Indeed, courts have emphasized that Rule 15(c)(3) contains a separate "mistake" requirement that must be satisfied independent of the notice requirement. *Id*. (quoting *Worthington,* 8 F.3d at 1257; *Wood,* 618 F.2d at 1230).

This case mirrors *Baskin*, where the plaintiff failed to name a party as a defendant because he "simply did not know the identity" of the proper defendant. *Baskin*, 138 F.3d at 704. The Seventh Circuit held this reflected a lack of knowledge rather than a mistake, and therefore relation back was improper. *Id*.

Here, Plaintiff candidly admits he did not name Markham initially because he did not know which municipality employed Tolbert – a case of lack of knowledge rather than mistake. This case is therefore analogous to *Baskin,* and the authorities it cites, where the courts found no mistake when the plaintiff lacked information about certain defendants' identity.

Plaintiff attempts to circumvent these authorities by arguing that naming "Sims" in the original complaint satisfies the statute of limitations as to claims against both "Tolbert" and Markham. This argument fails for several reasons. First, even accepting that "Sims" and "Tolbert" refer to the same individual does not cure plaintiff's failure to name Markham as her employer within the statutory period. The Seventh Circuit has held that "in the absence of a mistake in the identification of the proper party, it is irrelevant for purposes of Rule 15(c)(3) whether or not the purported substitute party knew or should have known that the action would have been brought against him." *Wood v. Worachek*, 618 F.2d 1225, 1230 (7th Cir. 1980).

Plaintiff's reliance on the Advisory Committee Notes is similarly misplaced. The notes address "inconsequential pleading errors," not failure to name a party due to lack of knowledge of their identity. Using "Sims" versus "Tolbert" may be inconsequential, but failing to name

9

Markham as a defendant is not a mere pleading error – it reflects a lack of knowledge about a proper party's identity, which courts have consistently held does not permit relation back.

The notice argument advanced by plaintiff – that Markham received notice through service attempts on Tolbert/Sims – also fails. As held in *Daniel v. City of Matteson*, 2011 U.S. Dist. LEXIS 5546, at *11 (N.D. Ill. Jan. 18, 2011), "[e]stablishing the existence of a mistake is a threshold requirement in a 15(c) inquiry, and is independent of the determination of whether the party to be brought in had knowledge of the action." Notice alone cannot save an untimely amendment absent a showing of mistake.

The policy underlying statutes of limitations supports this result. These time limits are "fundamental to a well-ordered judicial system," not mere technicalities. *Bd. of Regents v. Tomanio*, 446 U.S. 478, 487 (1980). Allowing relation back based on lack of knowledge rather than mistake would effectively nullify these important limits.

For these reasons, plaintiff's attempt to add Markham after the limitations period cannot relate back under Rule 15(c), regardless of whether "Sims" and "Tolbert" refer to the same person. The claim against Markham is time-barred and should be dismissed.

D. <u>Plaintiff's Reliance on Manuel v. City of Joliet is Misplaced and Does Not Revive the Time-Barred Malicious Prosecution Claim</u>

Plaintiff incorrectly interprets *Manuel v. City of Joliet*, 580 U.S. 357 (2017), as a basis for circumventing the statute of limitations for his malicious prosecution claim. A careful reading of *Manuel* reveals that the case addresses only the accrual of a Fourth Amendment unlawful detention claim, not the viability of a state law malicious prosecution claim.

1. *Manuel* Addresses Fourth Amendment Detention Claims, Not State Law Malicious Prosecution Claims.

In *Manuel*, the Supreme Court clarified that a Fourth Amendment claim for unreasonable pretrial detention can extend beyond the initial legal process when that process is based on fabricated evidence. *Manuel*, 580 U.S. at 367-369. However, the Court explicitly did not resolve the broader question of whether a malicious prosecution claim can be brought under the Fourth Amendment. In fact, the dissenting opinion in *Manuel* pointedly argued that such a claim cannot be brought under the Fourth Amendment. *Id*. at 375-381 (Alito, J., dissenting).

Critically, *Manuel* did not even address state law malicious prosecution claims or their statutes of limitations. The case was solely focused on the narrow question of whether a Fourth Amendment claim for unlawful detention could continue after the initiation of legal process. *Id*. at 359-360.

2. Distinct Legal Theories Cannot Be Conflated to Avoid Statute of Limitations

Plaintiff attempts to plead artfully around the statute of limitations by attempting to incorporate malicious prosecution elements into a Fourth Amendment detention claim. This approach is legally insufficient for several reasons:

a. Malicious Prosecution and Fourth Amendment Detention Are Distinct Claims

The elements of a malicious prosecution claim fundamentally differ from a Fourth Amendment unlawful detention claim. To establish a malicious prosecution claim under Illinois law, a plaintiff must prove four distinct elements: (1) the commencement or continuation of criminal proceedings by the defendant, (2) the termination of those proceedings in the plaintiff's favor, (3) the absence of probable cause for the original prosecution, and (4) the presence of malice. *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996) (quoting *Joiner v. Benton Community Bank* (1980), 82 Ill. 2d 40, 45, 44 Ill. Dec. 260, 411 N.E.2d 229, quoting *Ritchey v. Maksin* (1978), 71 Ill. 2d 470, 475, 17 Ill. Dec. 662, 376 N.E.2d 991))). Each of these elements

11

requires a nuanced showing of legal wrongdoing that extends beyond the initial arrest or detention.

In contrast, a Fourth Amendment detention claim focuses more narrowly on the constitutional reasonableness of the seizure itself. Under the Fourth Amendment, the critical inquiry is whether the detention was supported by probable cause and whether the restraint of liberty was objectively reasonable. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Unlike malicious prosecution, a Fourth Amendment claim does not require a showing of the prosecution's ultimate termination or the subjective malice of the arresting officers. Instead, the analysis centers on the objective circumstances of the seizure at the time it occurred. *Whren v. United States*, 517 U.S. 806, 813 (1996) (emphasizing the objective reasonableness standard in Fourth Amendment seizures and not the actual motivations of the individual officers involved).

The key differences are subtle but significant. A malicious prosecution claim looks retrospectively at the entire criminal process, examining the motivations and actions leading to and throughout the prosecution, where a Fourth Amendment detention claim, by contrast, is more immediately focused on the moment of seizure and the constitutional validity of that specific or continued restraint of liberty (citations omitted).

### b. Statute of Limitations Cannot Be Circumvented by Pleading Artistry

Courts consistently reject attempts to revive time-barred claims by recharacterizing them. *See*, *e.g., Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797 (7th Cir. 2008) (rejecting the plaintiff's attempt to use the "continuing violation" doctrine to revive time-barred claims). Plaintiff's effort to do so should be rejected likewise.

### c. Plaintiff's Own Pleading Demonstrates the Distinction

Tellingly, Plaintiff filed a separate state law malicious prosecution claim (Count II), which is unquestionably time-barred. The one-year statute of limitations for municipal tort claims began running on May 1, 2023, when the criminal case terminated in plaintiff's favor (Am. Compl. Dkt. 80 at ¶41). Plaintiff's complaint, adding Markham as a Defendant, was filed on October 7, 2024, and is therefore plainly untimely pursuant to 745 ILCS 10/8-101.

The Fourth Amendment claim for unlawful detention and the state law prosecution claim remain distinct legal theories, each with their own elements and limitations periods. Plaintiff cannot circumvent the statute of limitations through creative pleading. As *Manuel* does not provide a mechanism for reviving plaintiff's time-barred malicious prosecution claim, plaintiff's claim for malicious prosecution is properly dismissed.

For all the foregoing reasons, Plaintiff's complaint fails on multiple grounds. The group pleading and conspiracy allegations fail to meet even basic pleading requirements, relying solely on conclusory allegations without specific facts showing any agreement between defendants. The attempt to add Markham as a defendant after the limitations period cannot be saved by Rule 15(c)'s relation back doctrine, as Plaintiff's failure to name Markham was due to lack of knowledge rather than mistake. Finally, Plaintiff's effort to circumvent the statute of limitations by recasting a time-barred malicious prosecution claim as a Fourth Amendment violation must fail, as these remain distinct legal theories with different elements and limitations periods. Accordingly, this Court should dismiss Plaintiff's complaint in its entirety.

Based on the foregoing, Defendants Dominica Tolbert and City of Markham respectfully request that this Honorable Court dismiss Plaintiff's complaint in its entirety, and grant any additional relief this Honorable Court deems equitable and just under the circumstances.

Respectfully submitted,

                                                      Dominica Tolbert and City of Markham,
                                                      Defendants

                                              By:   /s/ Eydie R. Glassman
                                                            Eydie R. Glassman

Eydie R. Glassman (eydie@ergjd.com) ARDC No. 6277536
Steven A. Marderosian (steven@ergjd.com) ARDC No. 6231105
Eydie R. Glassman, Esq. Legal & Consulting Services, LLC
10 S. Riverside Plaza, Suite 875
Chicago, Illinois 60606
312.600.5001