**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

TIMOTHY WATKINS,

               Plaintiff,

    v.

SOUTH SUBURBAN MAJOR CRIMES
TASK FORCE, VILLAGE OF BURNHAM,
ET AL.

             Defendants.

Case No. 24 C 3555

Judge Sunil R. Harjani

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Timothy Watkins brings this action under Title 42, United States Code, Section 1983 and Illinois state law against 23 police officers, 11 municipalities, and the South Suburban Major Crimes Task Force ("SSMCTF"), a non-profit entity comprised of law enforcement agencies and officers from various municipal, county, and state agencies, after Watkins was tried for the murder of Vincent Means and acquitted after spending seven years in jail. In his amended complaint, Watkins sets forth the following allegations in numbered paragraphs:

14. Defendant-Officers took part in the investigation into the shooting of Vincent Means as part of the South Suburban Major Crimes Task Force.

15. During the course of the investigation, Defendant Officers took steps to falsely implicate the Plaintiff in the March 2, 2016, shooting.

16. Defendant-Officers and other investigating officers knowingly, intentionally, and falsely implicated Plaintiff as being involved in the shooting, despite the lack of physical evidence, eyewitness evidence, and evidence of any kind implicating Plaintiff as the shooter.

17. Specifically, Defendant-Officers and other involved officers, after examining the crime scene, watching surveillance videos, interviewing numerous witnesses, and examining other physical evidence, purposely misrepresented facts, and ignored exculpatory evidence that exonerated Plaintiff and evidence that implicated other potential suspects.

18. No eyewitnesses identified Plaintiff as the shooter.

19. A young woman who was the passenger in Vincent Means car described a possible suspect to investigators and participated in a photo line-up, yet did not identify Plaintiff as the shooter.

20. Nathan Parks, an individual that was with Plaintiff that evening, was arrested and held in a police station in Gary, Indiana based on a hold initiated by the Defendant-Officers.

21. Despite the lack of evidence that Plaintiff had anything to do with this shooting, Defendant-Officers questioned Nathan Parks about Plaintiff's involvement with the shooting.

22. Nathan Parks repeatedly denied Plaintiff was involved in the shooting and denied that he saw Plaintiff with a gun.

23. Defendant-Officers Daley and Nevarez aggressively and coercively questioned Nathan Parks while he was in their custody over the period of two days while Parks pleaded to be released.

24. Defendant-Officers detained, questioned, pressured and threatened Parks to say something to implicate Plaintiff in the shooting even though they knew there was no evidence that Plaintiff was involved in the shooting, and that Parks had no genuine information that Plaintiff was the shooter or otherwise involved.

25. Parks eventually made a false and coerced statement that implicated [Plaintiff] in the shooting as the result of the Defendant-Officers' unlawful and unconstitutional interrogation.

26. Parks remained imprisoned in Gary, Indiana pursuant to the Defendant-Officers' orders for four more days until he was transported, in the Defendant-Officers' custody and at the Defendant-Officers' insistence, to the Cook County courthouse to provide false testimony before the Grand Jury implicating Plaintiff.

27. After Parks testified falsely before the Grand Jury, the Defendant-Officers were waiting for Parks. They transported him to the south side of Chicago in their police vehicle where they released him on 95th Street.

28. Despite the lack of evidence that Plaintiff had anything to do with this shooting, Defendant-Officers wrote false and misleading reports and gave false and misleading information to the State's Attorney's Office about the strength of evidence against Plaintiff in order to initiate criminal charges against him for murder.

29. Defendant-Officers did so knowing there was no probable cause to bring charges against the Plaintiff.

30. One or more of the Defendant-Officers then provided false and misleading testimony before the Grand Jury implicating Plaintiff in order to obtain a felony indictment against the Plaintiff.

31. On April 11, 2016, based on the Defendant-Officers' false reports, false statements to the state's attorney, and false testimony, and the coerced testimony from Parks, Plaintiff was indicted on eight counts of first-degree murder.

33. On March 4, 2016, based on the Defendant-Officers' knowingly false allegations and initiation of a warrant for his arrest, Plaintiff was arrested by Lansing Police Department and transported to the custody of Defendant Daley at the Burnham Police Department.

36. Defendant-Officers did not have probable cause to bring criminal charges for murder against Plaintiff related to shooting of Vincent Means, yet they took steps to commence and continue his prosecution anyway.

41. Defendant-Officers each personally participated in the unlawful conduct and acted jointly and in concert with their fellow members of the South Suburban Major Crimes Task Force, and/or acquiesced to or failed to intervene to stop the unlawful conduct of the Defendant Officers who wrongfully alleged, charged and commenced the prosecution of Plaintiff for murder.

Doc. 80, Am. Cmplt. ¶¶ 14-31, 33, 36, 41.

Based on these facts, Watkins asserts the following claims: (1) Fourth Amendment claim for unlawful detention and wrongful prosecution under Section 1983; (2) malicious prosecution under Illinois law; (3) indemnification against the municipal employers and the SSMCTF under the Illinois Tort Immunity Act, 745 ILCS 10/9-102; and (4) *respondeat superior* against the municipal employers and the SSMCTF for the malicious prosecution claim under Illinois law. Certain Defendants have moved to dismiss the amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[1]

---

[1]  The defendants who have moved to dismiss are: Village of Burnham, John Daley, Nick Nomikos, Timothy Bolin, Steven Bowen, and Peter Belos ("Burnham Defendants"); Village of Dolton, Major Coleman and Darryl Hope ("Dolton Defendants"); Village of South Holland and Charles Leyden ("South Holland Defendants"); Village of Calumet Park and Keith Willoughby ("Calumet Park Defendants");

## DISCUSSION

### A. Group Pleading Against the Defendant Officers

All of the moving Defendant Officers argue that Counts I and II should be dismissed because Watkins improperly relies on "group pleading" which fails to give fair notice of the alleged wrongful conduct in which each moving Defendant Officer allegedly personally engaged. Watkins responds that that he has alleged that all of the defendant officers were part of the "SSMCTF investigation wherein they either actively orchestrated or knowingly permitted [Watkins] to be wrongfully charged and prosecuted for murder when there was no legally adequate basis to be believe he had committed the crime" and that is sufficient for notice-pleading purposes. Doc. 138 at 10.

"Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Ashcroft v. Iqbal*, 556 U.S 662, 676 (2009) ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Moreover, a plaintiff who sues multiple defendants must give fair notice to each defendant of the claims that each defendant must defend against. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.") (internal quotes and citation omitted). "There is no 'group pleading' doctrine, *per se*, that either permits or forbids allegations against defendants collectively; 'group

---

Village of Blue Island and Anthony Delgadillo ("Blue Island Defendants"); City of Markham and Dominica Tolbert (formerly Sims) ("Markham Defendants"); Village of Posen and William Alexander ("Posen Defendants"); Village of Riverdale and Antonio Padron ("Riverdale Defendants"); and Village of Lansing.

4

pleading' does not violate Fed. R. Civ. P. 8 so long as the complaint provides sufficient detail to put the defendants on notice of the claims." *Robles v. City of Chi.*, 354 F. Supp. 3d 873, 875 (N.D. Ill. 2019) (quoting *Lattimore v. Vill. of Streamwood*, 2018 WL 2183991, at *4 (N.D. Ill. May 11, 2018)). "The key to satisfying Rule 8 is that [a plaintiff] 'put the defendants on notice of what exactly they might have done to violate [his] rights.'" *Gray v. City of Chi.*, 2019 WL 3554239, at *5 (N.D. Ill. Aug. 1, 2019) (Lee, J.) (quoting *Kuri v. City of Chi.*, 2014 WL 114283, at *7 (N.D. Ill. Jan. 10, 2014)).

"As many courts have recognized, a plaintiff may be forced to employ limited group pleading in § 1983 suits alleging police officer misconduct where the plaintiff cannot 'specify which individual committed which parts of the alleged misconduct before the benefit of discovery.'" *Jordan v. City of Chi.*, 2021 WL 1962385, at *2 (May 17, 2021) (quoting *Kuri*, 2014 WL 114283, at *7). "The fair notice standard 'is not so rigid that it requires a plaintiff, without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific officer.'" *Id.* (quoting *Koh v. Graf*, 2013 WL 5348326, at *4 (N.D. Ill. Sept. 24, 2013)). Thus, in some cases, "an allegation directed at multiple defendants can be adequate to plead personal involvement." *Rivera v. Lake Cnty.*, 974 F. Supp. 2d 1179, 1194 (N.D. Ill. 2013). For example, motions to dismiss based on the group pleading argument have been rejected "in cases involving complaints against only a few defendants where the alleged facts plausibly suggest a basis for holding each of the defendants personally liable." *Karney v. City of Naperville*, 2016 WL 6082354, at *7 (N.D. Ill. Oct. 18, 2016) (denying motion to dismiss based on group pleading where the "case only involve[d] two police officer defendants, both of whom

appear[ed] from the allegations to have been present and involved in the conduct of which Plaintiff complain[ed].").[2]

On the other hand, other decisions from this district have dismissed complaints that rely on group pleading because defendants were not on notice of which actions they were alleged to have committed. *See Lattimore*, 2018 WL 2183991, at *4 (plaintiffs repeatedly alleged that "Responding Officers" or "Defendant Officers" took certain actions and identified specific acts by one defendant officer, but "fail[ed] to identify what the other [12] Defendant Officers did or did not do in relation to their constitutional claims."); *Earl v. Howard*, 2017 WL 2779797, *3 (N.D. Ill. June 27, 2017) ("Plaintiff's allegations fail to adequately put each individual Defendant on notice of Plaintiff's constitutional claims because it is implausible that approximately 85 Defendants are liable for the same conduct based on the current allegations."); *Liera v. City of Chi.*, 2014 WL 3921359, at *3 (N.D. Ill. Aug. 5, 2014) (plaintiffs alleged specific conduct by three defendant officers but brought the complaint "against an additional thirty-five police officers without alleging which officers were at which location or which officers participated in the alleged wrongful conduct"); *Martinez v. City of Chicago,* No. 09 C 5938 (N.D. Ill. Sept. 8, 2010) (dismissing plaintiffs' claims against 24 of the 30 defendant police officers because the complaint failed to "provide any facts whatsoever regarding these officers' involvement, and instead only

---

[2] Many of the cases Watkins cites in support of his group pleading argument involved a small number of officers. *See*, e.g., *Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017) (affirming summary judgment for defendants and noting in dicta that allegations against four officers from the same department for committing the distinct act of damaging property might have been sufficient to defeat a motion to dismiss earlier in the case); *Olson v. Champaign Cnty.*, 784 F.3d 1093, 1098, 1100-03 (7th Cir. 2015) (two officers from same department gave false info and one prosecutor verified same); *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (question of fact remained as to failure to intervene claim where three officers in same department "were mere feet away" from unlawful acts by other officer but failed to intervene); *Jones v. City of Chi.*, 2024 WL 4753687, at *2 (N.D. Ill. Nov. 12, 2024) (four officers in same department); *Jordan*, 2021 WL 1962385, *2 (four officers in same department fabricated story in reports and testimony); *Hill v. Cook Cnty.*, 463 F. Supp. 3d 820, 829, 836 (N.D. Ill. 2020) (five officers of a single investigation team within same department).

alleged "conclusory legal statements and/or abstract recitations of the elements of given claims");
*Carter v. Dolan*, 2009 WL 1809917, at *3-4 (N.D. Ill. June 25, 2009) (where plaintiff alleged that
only three of the defendants actually entered her apartment, complaint failed to provide adequate
notice to the other six defendants of their allegedly unconstitutional conduct).

Watkins' amended complaint is similar to complaints that have not survived a motion to
dismiss.  Here, the sole allegation Watkins offers of specific officers' misconduct relates only to
Defendant Officers Daley and Nevarez, and states "Defendant-Officers Daley and Nevarez
aggressively and coercively questioned Nathan Parks while he was in their custody over the period
of two days while Parks pleaded to be released." Doc. 80, ¶ 23.  The remainder of Watkins'
allegations concerning his arrest, detention, and prosecution are directed at the 23 "Defendant-
Officers" as a group.  The amended complaint is completely void of particularized wrongdoing
allegations against the other 21 Defendant Officers.  For example, rather than name specific
officers in paragraph 30 of the amended complaint, Watkins alleges, "One or more of the
Defendant-Officers then provided false and misleading testimony before the Grand Jury
implicating Plaintiff in order to obtain a felony indictment against the Plaintiff." Doc. 80, ¶ 30.
The Court cannot plausibly infer that all 23 Defendant Officers from 12 different police
departments could have committed all of the alleged actions. *Robles*, 354 F. Supp. 3d at 875
(distinguishing 11 officers assigned to a single police unit "organiz[ing] a plan" from cases where
"numerous unaffiliated officers arrive at a scene independently and then engage based on an ad
hoc assignment or on their own initiative.").  Nevertheless, Watkins' response brief suggests that
he has information allowing him to plead other Defendant Officers' personal involvement in
greater detail.  Watkins admits that he "has some information about the Defendant officers'
involvement based on reports received in the criminal case discovery and in response to FOIA

7

requests, [but] the extent of their involvement is not known to Plaintiff and will need to investigated in discovery." Doc. 138 at 9. Moreover, Watkins has access to documentation from his criminal case, including police reports, grand jury testimony, and other material which should reveal which officers participated in key events such as witness interviews, report writing, and grand jury testimony.

Under these circumstances, the Court finds that Watkins fails to adequately put the moving Defendant Officers (except Defendant Daley) on notice of the claims against them. Accordingly, the Burnham Defendants' motion to dismiss is denied with respect to Defendant Daley. The Court grants Defendants' motions to dismiss Counts I and II with respect to the other moving Defendant Officers without prejudice and also grants Watkins' request for leave to file a second amended complaint which should include any other information currently available to Watkins concerning the Defendant Officers' personal involvement in the events forming the basis of his claims. *Earl*, 2017 WL 2779797, *3 ("Plaintiff must narrow and group together the individual Defendants' alleged misconduct in a more particularized way" and "include some details about each Defendant."); *Koh*, 2013 WL 5348326, at *5 ("group pleading is not an ideal practice, especially where it would seem possible to name a particular defendant, or at least a subset of defendants, as committing or participating in certain conduct."); *Johnson v. City of Chicago,* No. 08 C 2629, at 2 (N.D. Ill. Feb. 2, 2009) (granting motion to dismiss with leave to amend where plaintiff's "statement of facts in his response brief show[ed] that he knows of additional facts concerning the events" of his alleged false arrest and malicious prosecution). Because the amended complaint fails to state claims against the moving Defendant Officers (except Daley), it also fails to state the corresponding indemnification and *respondeat superior* claims in Counts III and IV against the moving municipalities. *Johnson v. Guevara*, 2025 WL 903813, at *39 (N.D. Ill. Mar. 24, 2025)

("*Respondeat* superior and indemnification are derivative liability claims that rise or fall with the claims against the Individual Defendants."). Thus, Watkins' derivative claims in Count III and IV against the moving municipal Defendants are dismissed without prejudice.

### B. Statute of Limitations on Claims Against Five Municipalities and Officer Tolbert

Five municipal Defendants (Village of South Holland, Village of Blue Island, Village of Posen, Village of Riverdale, and the Village of Lansing) argue that the *respondeat superior* claims (Count IV) against these municipalities are time-barred. Watkins responds that the claims in his amended complaint relate back to the timely-filed May 1, 2024 complaint against the municipalities' employees and are not time-barred. Watkins alleges that his underlying criminal case was dismissed in his favor on May 1, 2023. Doc. 80, Am. Cmplt. ¶ 39. Watkins filed his original complaint on May 1, 2024, one year after he was acquitted. Watkins' original complaint named 24 Defendant Officers, including Defendant Officers Leyden (employee of South Holland), Delgadillo (employee of Blue Island), Alexander (employee of Posen), Padron (employee of Riverdale), and Rodriguez (employee of Lansing), but he did not name the Village of South Holland, Village of Blue Island, Village of Posen, Village of Riverdale, or Village of Lansing. On October 7, 2024, approximately one year and four months after the one-year deadline, Watkins filed his amended complaint adding the Village of South Holland, Village of Blue Island, Village of Posen, Village of Riverdale, and Village of Lansing as Defendants.

Count IV for *respondeat superior* against the defendant municipal employers for the defendant officers' malicious prosecution under state law are governed by a one-year Illinois statute of limitations. Under Illinois law, "[n]o civil action . . . may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101(a).

Watkins' claims for malicious prosecution accrued when his criminal case terminated in his favor. *Shelton v. Wright*, 2011 WL 856811, at *3 (N.D. Ill. Mar. 9, 2011); *Ferguson v. City of Chi.*, 820 N.E.2d 455, 459 (Ill. S.Ct. 2004). Dismissal of a complaint on statute of limitations grounds "is appropriate only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (internal quotes and citation omitted).

Watkins invokes Federal Rule of Civil Procedure 15(c)(1)(C) for relation back to the timely filing of the original complaint against the municipalities' employees. "Under Rule 15(c)(1)(C), an amendment to a pleading that 'changes the party or the naming of the party against whom a claim is asserted' relates back to the date of the original pleading so long as: (1) the amendment asserts a claim or defense arising out of the same conduct, transaction, or occurrence as the original complaint; (2) 'within the period provided by Rule 4(m),' the party added by amendment 'received such notice of the action that it will not be prejudiced in defending on the merits'; and (3) the added party 'knew or should have known that the action would have been brought against it, *but for a mistake concerning the proper party's identity*.'" *Herrera v. Cleveland*, 8 F.4th 493, 498 (7th Cir. 2021) (emphasis in original).

Watkins' amended complaint contains the same allegations and claims as his original Complaint. The five municipal defendants do not dispute that Watkins satisfies the requirement in Rule 15(c)(1)(B) that the amendment asserts a claim that "arose out of the conduct, transaction, or occurrence set out [] in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); *see Jackson v. Kotter*, 541 F.3d 688, 696 (7th Cir. 2008) (holding "same transaction or occurrence" requirement "obviously" met where plaintiff sought to add claim against the government after suing individuals officers for negligence).

10

As to the second requirement, Watkins states, and the five municipal defendants do not dispute, that they were served on July 9, 2024 (Riverdale and Blue Island) and August 2, 2024 (Lansing, Posen, and South Holland) with requests to waive service for their officer defendant employees. Doc. 138 at 14. Receipt of the requests to waive service was actual notice of the action, and these dates were within the Rule 4(m) period. *See* Docs 16, 53. The five municipal defendants also do not argue that they would be prejudiced in defending against Watkins' claims now.

The third and final requirement is that Watkins made a "mistake" as to the proper identity of the municipal employers. In the original complaint, Watkins named the Village of Burnham, City of Oak Forest, and Village of Dolton as the employers of Officer Defendants Padron, Rodriguez, Delgadillo, Alexander, and Leyden because "they were the municipalities that could be discerned from the available information as the potential employers of the individual Defendants." Doc. 138 at 15. Watkins explains that "[u]pon further investigation and attempts to serve the individuals, [he] discovered that some of the individual Defendants were actually employed by other (unnamed) municipalities at the time of the events." *Id.*

The five municipal defendants argue that Watkins' omission of them from the original complaint was not a "mistake" within the meaning of Rule 15(c)(1)(C). They cite *Hall v. Norfolk S. Ry. Co.* 469 F.3d 590, 596 (7th Cir. 2006) for the proposition that "mistake concerning the identity of the proper party does not apply where plaintiff simply lacks knowledge of the proper defendant." But that statement in *Hall* "is all but impossible to square with [the Supreme Court's decision in] *Krupski*, as the Seventh Circuit itself said in *Herrera*: 'it is difficult to reconcile the result in *Hall* (not a John Doe case) with *Krupski* . . . .'" *Smith v. Zettergren*, 2021 WL 4502175, at *6 (N.D. Ill. Sept. 30, 2021) (quoting *Herrera*, 8 F.3d at 498).

11

In *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010), the Supreme Court clarified that a corporate misnomer could be a mistake. The *Krupski* plaintiff named Costa Cruise as a defendant instead of its related entity, Costa Crociere. The Supreme Court held that a mistake about which of two related companies operated the cruise ship on which plaintiff had been injured sufficed under Rule 15(c)(1)(C). The Court observed that no mistake occurs for purposes of Rule 15(c)(1)(C)(ii) where a plaintiff makes "a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties," *id.* at 549, but knowledge of "a party's existence does not preclude [him] from making a mistake with respect to that party's identity." *Id.* According to the Supreme Court, the proper inquiry is "what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." *Id.* at 548 (emphasis original). In *Herrera*, the Seventh Circuit explained that *Krupski* did not change the analysis of John Doe claims. *Herrera*, 8 F.4th at 498-99. Under the John Doe rule, an unnamed John Doe defendant does not qualify as a mistake under Rule 15(c). *Id.* at 497-98. If a plaintiff knows that he does not know the proper defendant's name, using a John Doe as a placeholder is a "conscious choice, not an inadvertent error." *Id.* at 499; *see also Rodriguez v. McCloughen*, 49 F.4th 1120 (7th Cir. 2022) ("using a placeholder cannot be a 'mistake' for the purpose of Rule 15(c)(1)(C)(ii) because the plaintiff knows that no one named 'John Doe' was involved.").

Applying the principles in *Krupski*, there is no basis for finding that Watkins made "a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties." *Krupski*, 560 U.S. at 549. In fact, Watkins' original complaint shows that he clearly intended to sue the municipal employers of Defendant Officers Leyden, Delgadillo, Alexander, Padron, and Rodriguez. Watkins explicitly alleged that the Village

12

of Burnham, City of Oak Forest, and Village of Dolton were "the employers and principals of the Defendant Officers" and he brought indemnification and *respondeat superior* claims against the employers of Defendant Officers. Doc. 1 ¶¶ 9, 49-53. Watkins simply sued the wrong municipal employers for Defendant Officers Leyden, Delgadillo, Alexander, Padron, and Rodriguez. Given Watkins' mistake as to the proper municipal employers of Defendant Officers Leyden, Delgadillo, Alexander, Padron, and Rodriguez Padron, it is plausible that his naming of the Village of Burnham, City of Oak Forest, and Village of Dolton rather than the Village of South Holland, Village of Blue Island, Village of Posen, Village of Riverdale, and the Village of Lansing was the kind of legal mistake that Rule 15(c) contemplates. *See Mortensen v. Arrowood*, 711 F. Supp. 3d 935, 939 (N.D. Ill. 2024) (allowing plaintiff to amend his complaint and declining to conclude that plaintiff could not satisfy the requirements for relation back given plaintiff's apparent misunderstanding about which of two municipal offices, if any, was legally responsible for the alleged misconduct).

Defendants Blue Island, Posen, Riverdale, and Lansing argue that they did not know of their potential liability because the original complaint provides no specific allegations against Defendant Officers Delgadillo, Alexander, Rodriguez, and Padron. The Court is not persuaded. Even though the original complaint did not describe any particular actions taken by Defendant Officers Delgadillo, Alexander, Padron, and Rodriguez, these four municipal defendants knew as soon as they received the original complaint that Watkins meant to sue them for indemnification and *respondeat superior* based on the conduct of their employees, rather than Burnham, Dolton, and Oak Forest. Moreover, unlike *Herrera*, this is not a John Doe scenario where a plaintiff sues a John Doe defendant because he does not know who injured him, and the defendant is unaware of the lawsuit. Here, the five municipal defendants were served with a waiver request for their

employees and received notice of the action within the time frame provided under Rule 4(m), including the approved extensions.  Accordingly, the Court declines to dismiss Watkins' claims against the Village of South Holland, Village of Blue Island, Village of Posen, Village of Riverdale, and the Village of Lansing on this basis at this time.

The Village of Blue Island, Village of Posen, Village of Riverdale, and Village of Lansing next move the Court to dismiss Count III, which is the claim for indemnification under the Illinois Tort Immunity Act, 745 ILCS 10/9-102.  Under Section 9-102, "[a] local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages . . . for which it or an employee while acting within the scope of his employment is liable." 745 ILCS 10/9-102.  These four municipal defendants argue that Watkins' indemnification claims are barred by the one-year statute of limitations of 745 ILCS 10/8-101 that began to run on May 1, 2023, the day Watkins' criminal case terminated in his favor.  Watkins responds that the indemnification claims do not accrue unless and until judgment is entered against the individual defendants. Watkins is correct.  "[T]he statute of limitations for 'indemnity claims under § 8–101 does not begin to accrue until judgment is entered against the employee.'" *Sneed v. Vill. of Lynwood*, 2022 WL 5116464, at *3 (N.D. Ill. Oct. 4, 2022) (quoting *Esparza v. Dart*, 2014 WL 5628050, at *3 (N.D. Ill. Nov. 4, 2014)); *see also Wilson v. City of Chi.,* 120 F.3d 681, 685 (7th Cir. 1997) (a plaintiff need not "wait until a final judgment" before bringing an indemnity claim under § 9–102); *Loza v. City of Chi.,* 2009 WL 3125542, at *1 (N.D. Ill. Sept. 25, 2009) ("[t]he logical implication of the *Wilson* decision is that the actual fact that gives rise to a claim under § 9–102 is the court entering judgment against the employee defendant, even though it may be appropriate for a plaintiff to bring the claim in anticipation of that fact").  Because Watkins' claims against the individual defendants are still pending and no judgment has been entered in this action, the statute

of limitations on any indemnification claims has not started and the indemnification claims are not time-barred. Consequently, Defendants' motions to dismiss are denied as to Count III on statute of limitations grounds.

The final statute of limitations issue concerns whether Watkins' malicious prosecution claim against officer Dominica Tolbert in Count II is timely. Doc. 135 at 5. Watkins' malicious prosecution claim in Count II against Officer Tolbert is subject to a one-year statute of limitation for tort claims brought against an employee of a local entity, 745 ILCS 10/8-101(a). *Dorsey v. City of Chi.*, 2025 WL 327425, at *12 (N.D. Ill. Jan. 28, 2025); *see also Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) (confirming that this one-year limitations period applies to "state claims that are joined with a § 1983 claim"). The Markham Defendants argue that officer Dominica Tolbert was sued on October 7, 2024, more than one year after Watkins was acquitted. The Markham Defendants are incorrect. The original complaint named Officer Sims, which is Tolbert's maiden name, with her Task Force badge numbers as a defendant. Watkins states that Sims was the name used by this Officer Defendant when she participated in the SSMCTF homicide investigation. In Watkins' motion to amend the complaint, he specifically referred to Defendants Sims by both her maiden and married name, i.e., "Sims (n/k/a Dominica Tolbert)." Doc. 78 at 1.

Tolbert's situation is a case of a misnomer rather than the addition of a new party. "'Misnomer' denotes the case in which the plaintiff has the wrong name of the right party." *Athmer v. C.E.I. Equip. Co. Inc.*, 121 F.3d 294, 296 (7th Cir. 1997). "[A] misnomer can be corrected at any time, provided that the plaintiff serves the defendant with reasonable promptness, even if it is after the statute of limitations has run (as in a case in which the complaint was filed just before it ran)." *Id*; *Hill v. Shelander*, 924 F.2d 1370, 1376 (7th Cir. 1991) ("Amendment with relation back is generally permitted in order to correct a misnomer of a defendant where the proper defendant is

already before the court and the effect is merely to correct the name under which he is sued.")
(internal quotes and citation omitted); *see also Rodriguez*, 49 F.4th at 1123 ("[s]uing a particular
person by code name differs from suing 'John Doe' or an equivalent placeholder" because "[it]
signifies a real person.").  Tolbert was served with the original timely complaint within the time
allowed by the Court. Docs. 53, 63.  Therefore, the Court denies the Markham Defendants' motion
to dismiss Count II as untimely.[3]

### C.  Conspiracy Claim

Only the Burnham Defendants, South Holland Defendants, and Markham Defendants
argue that Watkins fails to assert a Section 1983 civil conspiracy claim.  Specifically, they argue
that to the extent that Watkins attempts to state a conspiracy claim, it is not supported by any
allegations that plausibly allege the existence of any agreement to deprive Watkins of his
constitutional rights.

"To state claim under § 1983 for civil conspiracy, a plaintiff must allege facts from which
the Court may reasonably infer there was '(1) an express or implied agreement among defendants
to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in
the form of overt acts in furtherance of the agreement.'" *Wheeler v. Piazza*, 364 F. Supp. 3d 870,
880 (N.D. Ill. 2019) (quoting *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988)).  "By their

---

[3] For the same reasons, Watkins' motion to amend the complaint [156] to correct defendant Michael
Rodriguez's name is granted.  Defendant Rodriguez is currently named as Erasmo Rodriguez in the
amended complaint.  Michael Rodriguez, a Lansing police officer at the time of the underlying events, was
named as a defendant by his last name and badge number in the original complaint.  Watkins was granted
leave to file an amended complaint to provide the full names of the Defendant Officers and to add certain
municipalities that employed them.  On October 7, 2024, Watkins filed his amended complaint with the
name of Erasmo Rodriguez for Defendant Rodriguez.  Erasmo is Michael Rodriguez's middle name.
Watkins inadvertently named Defendant Rodriguez by his middle name rather than his first name in the
amended complaint.  Michael Rodriguez received notice of the original complaint and waived service
within the Rule 4(m) period, including extensions. *See* Docs. 40, 53.  Neither the Village of Lansing nor
Rodiguez has moved to dismiss Defendant Rodriguez.

very nature, conspiracies are carried out in secret, so evidence is usually sparse at the pleading stage." *Hill*, 463 F. Supp. 3d at 840.  Thus, to withstand a Rule 12(b)(6) motion, a complaint must only "indicate the parties, the general purpose, and approximate date of the agreement to form a conspiracy so that the defendant has notice of the charges against him." *Estate of Sims v. Cnty. of Bureau*, 506 F.3d 509, 517 (7th Cir. 2007).  It is not necessary at the motion to dismiss stage for a plaintiff to "establish what roles the individual defendants played nor does he need to allege facts dispositively proving a 'meeting of the minds.'" *Haliw v. City of South Elgin*, 2020 WL 1304697, at *3 (N.D. Ill. Mar. 18, 2020).  Rather,  "[u]nder *Twombly*, all [a] plaintiff need[s] to allege [is] a plausible account of conspiracy." *Geinosky v. City of Chi.*, 675 F.3d 743, 749 (7th Cir. 2012).

Although Watkins' assertion of a conspiracy in Count I is largely conclusory, allegations elsewhere in the amended complaint plausibly support a claim for conspiracy.[4] Doc. 80, Am. Cmplt. ¶ 44.  Watkins has sufficiently pled facts to support his conspiracy claim by alleging the parties, general purpose, and the approximate date of the conspiracy.  First, Watkins identifies the parties to the conspiracy as the individual Defendant Officers and "other investigating officers" who worked together as part of the SSMCTF's investigation into the shooting of Vincent Means.  Doc. 80, ¶¶ 16, 17.  The fact that Watkins includes "other investigating officers" in his allegations does not render his allegations insufficient. *Royer v. Elkhart City of,* 2022 WL 17600377, at *7 (N.D. Ind. Dec. 13, 2022) (at the motion to dismiss stage, "it is permissible and expected for a plaintiff to only be able to identify a portion of the co-conspirators instead of providing a complete list.").  Watkins' amended complaint also alleges the general purpose of the conspiracy: to "falsely

---

[4] Watkins acknowledges that he did not allege a separate conspiracy claim.  Watkins could have alleged a separate conspiracy count, but he was not required to do so. *Savory v. Cannon*, 2024 WL 4786167, at *17 (C.D. Ill. Oct. 3, 2024); *Gardunio v. Town of Cicero*, 674 F. Supp. 2d 976, 983-84 (N.D. Ill. 2009) ("Plaintiff is not required by the Federal Rules of Civil Procedure to plead [false arrest and conspiracy to falsely arrest] claims [each] in a separate count.").

implicate[] [Watkins] as being involved in the shooting, despite the lack of physical evidence, eyewitness evidence, and evidence of any kind implicating [Watkins] as the shooter." Am. Cmplt. ¶ 16. The investigation team allegedly created false reports, coerced testimony from Parks, provided false information to prosecutors, and falsely testified before the grand jury to implicate Watkins despite the lack of evidence that he was involved in the murder. *Id*. at ¶¶ 16-17, 21-25, 28-30, 36. Similar allegations of the general purpose of a conspiracy have been found sufficient to allege a conspiracy claim. *See Royer,* 2022 WL 17600377, at *7 (allegation that the general purpose of the conspiracy was "to frame [plaintiff] of the crime [of murder] and to thereby deprive him of his constitutional rights" was sufficient); *Sanchez v. Vill. of Wheeling*, 447 F. Supp. 3d 693, 705 (N.D. Ill. 2020) (allegation that the general purpose of the conspiracy was to "coerce [plaintiff's] and witness's false statements with the goal of ensuring that he would be charged and convicted" was sufficient); *Hill*, 463 F. Supp. 3d at 840 (allegation that the general purpose of the conspiracy was "to implicate [the plaintiff] in the Frank's Liquor Store robbery" was sufficient). Finally, the amended complaint identifies the approximate dates of the conspiracy, the immediate aftermath of the March 2, 2016 shooting and continuing through the indictment of Watkins on April 11, 2016. Doc. 80 ¶¶ 15, 23, 33. Reviewed as a whole and in the light most favorable to Watkins, these factual allegations are sufficient to plausibly suggest a meeting of the minds between the individual Defendant Officers to deprive Watkins of his constitutional rights. As a result, Watkins' amended complaint states a Section 1983 claim for conspiracy. The Court denies the motions to dismiss the conspiracy claim.

The Burnham Defendants also argue that the Village of Burham police officers "cannot be found to have engaged in a conspiracy pursuant to the intra-corporate [conspiracy] doctrine." Doc. 109 at 8. Under the intracorporate conspiracy doctrine, according to the Burnham Defendants, "an

agreement among two or more employees of a single corporation who simply meet in the regular course of their jobs is not considered a conspiracy." *Id*. at 7-8. "[T]he Seventh Circuit has not addressed the applicability of the intracorporate conspiracy doctrine to § 1983 claims." *Hayes v. Bd. of Ed. Of City of Chi.*, 629 F. Supp. 3d 816, 824 (N.D. Ill. 2022); *Ezell v. City of Chi.*, 2024 WL 278829, at *29 (N.D. Ill. Jan. 24, 2024). Courts in this district are split on whether it applies to Section 1983 claims. *Ochoa v. Lopez*, 2021 WL 4439426, at *9 (N.D. Ill. Sept. 28, 2021). "Most courts in this district have held that [the intracorporate conspiracy doctrine] applies to conspiracy claims under 42 U.S.C. § 1983." *Strauss v. City of Chi.*, 346 F. Supp. 3d 1193, 1210 (N.D. Ill. 2018). On the other hand, the Seventh Circuit "has on various occasions affirmed conspiracy claims involving only police officers from the same department." *Liggins v. City of Chi.*, 2021 WL 2894167, at *5 (N.D. Ill. July 9, 2021) (citing *Geinosky*, 675 F.3d at 749); *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1253–61 (7th Cir. 1984)); *see also Williams v. City of Chi.*, 2023 WL 6388891, at *10 n.7 (N.D. Ill. Sept. 29, 2023) ("courts in this district have expressed doubt about the applicability of the intracorporate conspiracy doctrine as an impediment to a civil conspiracy clam."). Thus, "district courts have overwhelmingly declined to dismiss conspiracy claims against police officers pursuant to the intracorporate conspiracy doctrine." *Liggins*, 2021 WL 2894167, at *5 (citing cases).

Even assuming that the doctrine applies to Section 1983 claims against police officers, it is not clear that it would apply to the facts alleged here. Under the intracorporate conspiracy doctrine, "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017). "The underlying rationale is that employees who work for a *single* entity cannot be said to conspire with one another, because (like tangoing) it takes two (or more) to conspire." *Haliw*, 2020 WL

1304697, at *4 (emphasis in original).  Here, the Burnham police officers are employees of the one legal entity, the Burnham police department, who are alleged to have conspired with employees of 10 different municipal police departments, separate legal entities.  The Burham Defendants cite no caselaw suggesting that the intracorporate conspiracy doctrine supports dismissing the conspiracy claims in this situation. *Fontano v. Godinez*, 2012 WL 2459399, at *5 (C.D. Ill. June 27, 2012) (intracorporate conspiracy doctrine did not bar plaintiff's Section 1983 civil conspiracy claim where defendants were not employed by the same entity).

Furthermore, "[t]he doctrine applies only when the agents of corporation or government entity act within the scope of their employment in joint pursuit of the entity's *lawful* business." *Gray v. City of Chi.*, 2022 WL 910601, at *14 (N.D. Ill. Mar. 29, 2022) (internal quotes and citation omitted) (emphasis in original); *Johnson*, 2025 WL 903813, at *33.  "In police misconduct cases, the doctrine is inapplicable if the alleged misconduct is not the product of routine police department decision-making." *Harris v. City of Chi.*, 2020 WL 7059445, at *5 (N.D. Ill. 2020); *see also Wilson v. Burge*, 667 F. Supp. 3d 785, 876 (N.D. Ill. Mar. 31, 2023).  Here, it is alleged that the Officer Defendants acted unlawfully to deprive Watkins of his constitutional rights.  The Burnham Defendants have not explained how this conduct is the product of routine policy department decision-making because Defendants could not have lawfully planned to violate constitutional rights. *Jordan v. Bonano*, 636 F. Supp. 3d 924, 932 (N.D. Ill. Oct. 24, 2022) ("doctrine does not apply because the alleged illegal conduct—including falsely arresting [plaintiff]—is 'not the product of routine police department decision-making.'"); *Ochoa*, 2021 WL 4439426, at *9 (intracorporate conspiracy doctrine did not apply to the plaintiff's § 1983 conspiracy claim because the plaintiff "alleged the deprivation of numerous civil rights, and that cannot be the goal of the City or its police department").  For these reasons, the Court declines to

dismiss Watkin's conspiracy claim as to the Burnham Defendants based on the intracorporate conspiracy doctrine.

### D. Federal Malicious Prosecution Claim

The Burnham Defendants next argue that Watkins' Fourth Amendment claim based on malicious prosecution in Count I is barred because a state law remedy exists. The Markham Defendants similarly argue that to the extent Count II attempts to state a federal malicious prosecution claim, Watkins may "bring [§]1983 malicious prosecution suits [only] when the relevant state's law does not provide . . . a way to pursue such claims." Doc. 135 at 6 (quoting *Ray v. City of Chi.*, 629 F.3d 660, 664 (7th Cir. 2011) (internal quotations omitted)); *see also Parish v. City of Chi.*, 594 F.3d 551, 552 (7th Cir. 2009). "And Illinois law provides a state remedy for malicious prosecution." *Parish*, 594 F.3d at 552. Watkins responds that he has stated a Fourth Amendment wrongful prosecution claim.

In *Thompson v. Clark*, 596 U.S. 36 (2022), "the Supreme Court recognized the existence of a Fourth Amendment malicious prosecution claim, overruling contrary Seventh Circuit precedent." *Franklin v. Askew*, 2022 WL 17093358, at *7 (N.D. Ill. Nov. 21, 2022); *Del Prete v. Vill. of Romeoville, Illinois*, 2025 WL 446260, at *16 (N.D. Ill. Feb. 10, 2025). "As other courts in this district have explained, however, *Thompson* did not overrule Seventh Circuit precedent holding that a plaintiff subject to a prosecution under Illinois law cannot bring a Fourteenth Amendment malicious prosecution claim (because Illinois law permits malicious prosecution claims; *see Ray v. City of Chicago,* 629 F.3d 660, 664 (7th Cir. 2011))." *Franklin*, 2022 WL 17093358, at *7 (citing cases). "The upshot is that [a plaintiff subject to a prosecution in Illinois] may bring a Fourth Amendment malicious prosecution claim to challenge a seizure without probable cause but may not bring a Fourteenth Amendment malicious prosecution claim to

challenge a denial of his liberty without due process." *Id*.  Given that Watkins grounds his malicious prosecution claim under the Fourth Amendment, his claim in Count I can proceed. *See* Doc. 80, Am. Cmplt. ¶ 44 (alleging that Defendant Officers violated Watkins' "right to be free from unreasonable seizure guaranteed him by the Fourth Amendment.").

As to Count II, the only claim Watkins raises in Count II is for a "state law claim for malicious prosecution," and not a federal claim. Doc. 80 at 8.  The Markham Defendants' motion to dismiss is therefore denied as to Count II on this basis.

## CONCLUSION

For these reasons, the Dolton Defendants' motion to dismiss [107] is granted, Calumet Park Defendants' motion to dismiss [108] is granted, Burnham Defendants' motion to dismiss [109] is granted in part and denied in part, South Holland Defendants' motion to dismiss [113] is granted in part and denied in part, Posen Defendants' motion to dismiss [124] is granted in part and denied in part, Blue Island Defendants' motion to dismiss [125] is granted in part and denied in part, Riverdale Defendants' motion to dismiss [133] is granted in part and denied in part, Village of Lansing's motion to dismiss [134] is granted in part and denied in part, and Markham Defendants' motion to dismiss [135] is granted in part and denied in part.  Plaintiff's Second Motion to Amend the Complaint [156] is granted.  These motions are granted without prejudice to Watkins filing a second amended complaint by May 2, 2025, consistent with this Opinion.


Dated:  April 18, 2025

Sunil R. Harjani
United States District Judge