UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY WATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SOUTH SUBURBAN MAJOR CRIMES TASK FORCE, VILLAGE OF BURNHAM, CITY OF OAK FOREST, VILLAGE OF DOLTON, CITY OF CALUMET PARK, VILLAGE OF RIVERDALE, CITY OF MARKHAM, CITY OF BLUE ISLAND, VILLAGE OF SOUTH HOLLAND, VILLAGE OF LANSING, VILLAGE OF POSEN, CITY OF CALUMET CITY, JOHN DALEY, NICK NOMIKOS, TIMOTHY BOLIN, STEVEN BOWEN, PETER BELOS, KURT MESSER, JOSE NEVAREZ, TIMOTHY GAINER, MATTHEW GAINER, RAMIRO MONTES, THOMAS ASHE, CHANTO IVERSON, MAJOR COLEMAN, DARRYL HOPE, ANTHONY DELGADILLO, CHARLES LEYDEN, DOMINICA TOLBERT, MICHAEL RODRIGUEZ, KEITH WILLOUGHBY, ANTONIO PADRON, MICHAEL VARKALIS, WILLIAM ALEXANDER, AND RANDALL ZIVKOVICH, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 24 CV 3555<br><br>Judge Sunil R. Harjani<br><br>Mag. Judge Heather K. McShain |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

1. This is an action for money damages brought pursuant to 42 U.S.C. § 1983.

2. Jurisdiction for Plaintiff's federal claims is based on 28 U.S.C. §§ 1331 and 1343(a). Jurisdiction for Plaintiff's state claims is based on supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims

1

arose in this district as alleged below.

## Parties

4. At all times relevant to this Complaint, Plaintiff Timothy Watkins resided in Cook County, Illinois.

5. Defendants Jose Nevarez #611/673, Tim Gainer #602, Matthew Gainer #600, Ramiro Montes #638, Thomas Ashe #615, Chanto Iverson #663/673, Kurt Messer #645, John Daley #101/627, Nick Nomikos #78, Timothy Bolin #82, Steven Bowen #74, Peter Belos #70, Anthony Delgadillo #634, Major Coleman #689, Darryl Hope #687, Charles Leyden #636, , Dominica Tolbert (formerly Sims) #685/669, Michael E. Rodriguez #646, Keith Willoughby #648, Antonio Padron #606, Michael Varkalis #167/651, William Alexander #640, and Randall Zivkovich #672/617 ("Defendant-Officers"), were, at the time of the events alleged, duly appointed and sworn police officers who were employed by various suburban police departments and/or the Illinois State Police and who executed their duties, in part, at the direction and under the control of the South Suburban Major Crimes Task Force in March and April 2016.

6. Defendant Officers Ashe, Iverson, T. Gainer, M. Gainer, Montes, Nevarez and Messer were employed as police officers by the Illinois State Police at the time of the events alleged in this complaint.

7. Defendant Officers Belos, Nomikos, Daley, Bowen and Bolin were employed as police officers by the Village of Burnham at the time of the events alleged in this complaint.

8. Defendant Officer Delgadillo was employed as a police officer by the City of Blue Island at the time of the events alleged in the complaint.

9. Defendant Officers Coleman and Hope were employed as police officers by the Village of Dolton at the time of the events alleged in the complaint.

10. Defendant Officer Leyden was employed as a police officer by the Village of South Holland at the time of the events alleged in the complaint.

11. Defendant Officer Tolbert (formerly Sims) was employed as a police officer by the City of Markham at the time of the events alleged in the complaint.

12. Defendant Officer Rodriguez was employed as a police officer by the Village of Lansing at the time of the events alleged in the complaint.

13. Defendant Officer Willoughby was employed as a police officer by the City of Calumet Park at the time of the events alleged in the complaint.

14. Defendant Officer Padron was employed as a police officer by the Village of Riverdale at the time of the events alleged in the complaint.

15. Defendant Officer Varkalis was employed as a police officer by the City of Oak Forest at the time of the events alleged in the complaint.

16. Defendant Officer Alexander was employed as a police officer by the Village of Posen at the time of the events alleged in the complaint.

17. Defendant Officer Zivkovich was employed as a police officer by the City of Calumet City at the time of the events alleged in the complaint.

18. At all times relevant to this Complaint, the Defendant-Officers were acting in the course and scope of their employment, and under color of state law, ordinance and/or regulation.

19. The Defendant-Officers are sued in their individual capacities.

20. Defendants Village of Burnham, Village of Dolton, City of Oak Forest, City of Calumet Park, Village of Riverdale, City of Markham, City of Blue Island, Village of South Holland, Village of Lansing, Village of Posen, and City of Calumet City are municipal corporations, duly incorporated under the laws of the State of Illinois, and were the employers

and principals of one or more of the Defendant-Officers at the time of the events alleged in this Amended Complaint, as alleged more specifically above.

21. South Suburban Major Crimes Task Force (SSMCTF) is a non-profit entity comprised of suburban, county and state law enforcement agencies and law enforcement officers from various municipal, county and state agencies.

22. SSMCTF acted as an employer, principal and/or organizational entity directing the conduct of the Defendant-Officers during the police investigation that is the subject of this Amended Complaint.

## Facts

23. On March 2, 2016, Vincent Means was shot and killed while driving in his vehicle near Will's Sports Bar (Will's) in Burnham, Illinois.

24. The same day, the Burnham Police Department began a criminal investigation into the shooting.

25. The Burnham Police Department activated the South Suburban Major Crimes Task Force to assist in the homicide investigation.

26. Defendant Belos was the Chief of the Burnham police department at the time and responded to the scene of the shooting shortly after the shooting.

27. Defendant Belos had ultimate supervisory authority of the Burnham police officers involved in the Means homicide investigation and oversight of the investigation being conducted by officers as part of the SSMCTF.

28. Defendant Nomikos was the Deputy Chief of the Burnham police department at the time and responded to the scene of the shooting shortly after the shooting.

29. Defendant Nomikos had supervisory authority of the Burnham police officers involved in the Means homicide investigation and oversight of the investigation being conducted by officers as part of the SSMCTF.

30. Upon information and belief, one or more of the other Defendant-Officers reported to and consulted with Defendants Belos and Nomikos about focusing on charging and prosecuting Plaintiff early on in the investigation, despite the lack of evidence and probable cause, and to the exclusion of other leads and suspects.

31. Defendants Belos and Nomikos agreed and ratified the decision to pursue charging and prosecuting Plaintiff despite the lack of evidence, and the other Defendant-Officers' decisions to ignore or discount other leads, potential suspects and information that negated Plaintiff's involvement in the shooting.

32. Defendants Belos and Nomikos failed to intervene in the other Defendant-Officers' actions to falsely implicate, charge and prosecute Plaintiff despite their ability to do so.

33. Defendants Belos and Nomikos, along with other Burnham police officers including Defendants Daley, Bolin, and Bowen, responded to the scene of the shooting shortly after the shooting.

34. Defendant Bolin testified in the criminal trial where Plaintiff was tried for murder.

35. Each of the Defendant-Officers, that responded to the scene were involved in securing the scene and collecting evidence.

36. Each of the Defendant-Officers that responded to the scene participated in the homicide investigation by supplying information regarding their observations and reporting information that was included and considered and/or should have been included and considered in the overall investigation and identification of any suspects.

37. Each of the Defendants that responded to the scene had a duty to accurately collect and report evidence and relevant information regarding the shooting and homicide investigation.

38. All of the named Defendant-Officers took part in the investigation into the shooting of Vincent Means as part of the South Suburban Major Crimes Task Force.

39. From an early stage of the investigation, Defendant-Officers honed in on Plaintiff as their chosen suspect and focused their investigation on attempting to create evidence to support their theory, rather than following the evidence where it led to identify the true killer.

40. ISP Defendant Montes served as team leader and, upon information and belief, was aware of, involved in and directed all aspects of the investigation.

41. ISP Defendant T. Gainer served as assistant commander and, upon information and belief, was aware of, involved in and also directed aspects of the investigation.

42. Defendants Montes and T. Gainer reviewed and signed off on every SSMCTF investigative report submitted by the Defendant-Officers.

43. ISP Defendants Nevarez, Montes, Ashe, T. Gainer and Messer interviewed patrons and employees of Will's, interviewed the passenger of Means' vehicle, performed neighborhood canvasses for witnesses and possible surveillance video footage, obtained and executed warrants to search Plaintiff's residence and other structures and vehicles, questioned Plaintiff's family members and friends, searched cell phones, and questioned or attempted to question Plaintiff.

44. Defendant Montes interviewed a witness who stated that he was an eyewitness to the shooting, and provided a description of the shooter that did not match Plaintiff's appearance on the night of the shooting. Defendant Montes ignored and discredited that witness's account.

45. In his review of the video, Defendant Ashe focused heavily on the movements of Plaintiff and his friends, despite the investigation being at an early stage and there being no evidence implicating Plaintiff as the shooter.

46. ISP Defendant Iverson obtained video surveillance for Burnham Cleaners and another nearby building (14534 S. Calhoun), and reviewed and reported what he determined to be a timeline of "significant events" related to the shooting and potential suspects.

47. The "significant events" that Defendant Iverson documented concerned the movements of Plaintiff and his friends, to the exclusion of any other individuals, other than the victim, despite the investigation being at an early stage and there being no evidence implicating Plaintiff as the shooter. Defendant Iverson's report omits mention of any other individuals and vehicles depicted in the videos, including a sedan seen speeding away at the time the shots were fired on the Burnham Cleaners video.

48. ISP Defendant M. Gainer conducted a parking lot canvass to collect a list of vehicles in the nearby parking lot on the night of the incident, and later questioned Plaintiff's grandmother.

49. Despite gathering the information regarding the vehicles and learning that one of the individuals associated with the vehicles was a member of the car club described as acting aggressively in Will's by another witness, neither Defendant M. Gainer nor any other officer took any further steps to investigate this information and potential leads.

50. Blue Island PD Defendant Delgadillo interviewed Will's patrons, downloaded surveillance/CCTV videos from Will's, created a timeline reporting what he determined to be relevant information from the Will's videos, reviewed the Burnham Cleaners video and reported his observations, reviewed the 14534 Calhoun video footage, created a timeline of events,

identified Plaintiff and friends based on information obtained from Will's, searched Plaintiff's girlfriend's cell phone, executed warrants at Plaintiff's residence and questioned Plaintiff's grandparents, and questioned Plaintiff in custody.

51. In his review and report of the videos, Defendant Delgadillo focused solely on the movements of Plaintiff and his friends, and omitted information about other individuals and vehicles depicted in the videos, despite the investigation being at an early stage and there being no evidence implicating Plaintiff as the shooter.

52. Dolton Defendants Coleman and Hope interviewed Will's patrons. Defendant Hope also interviewed Plaintiff's sister and girlfriend, executed a search warrant at Plaintiff's residence, and questioned Plaintiff's grandparents.

53. Defendant Hope, along with Defendant Padron, interviewed a patron who described members of a car club that were acting aggressively in the club. The same patron stated he later witnessed the shooting as he exited the bar, after which the patron overhead someone stating a possible motive for the shooting.

54. Upon information and belief, Defendant Hope and the other members of the SSMCTF, failed to do anything further to investigate the information from this patron even though the description of the car club members' clothing (vests) matched another witness's description of the shooter's clothing.

55. South Holland Defendant Leyden interviewed Will's patrons, conducted a neighborhood canvass, interviewed Will's security guards, retrieved and reviewed footage from Burnham Cleaners and 14534 S. Calhoun, reported his review of the footage, executed search warrant and conducted searches of Plaintiff's residence, and questioned Plaintiff's grandparents.

8

56. In his review of the videos, conducted with Defendant Zivkovich, Defendant Leyden focused on the movements of Plaintiff, his friends and their vehicles, despite the investigation being at an early stage and there being no evidence implicating Plaintiff as the shooter.

57. Markham Defendant Tolbert (Sims) conducted a neighborhood canvass for witnesses and video footage, participated in a photo line-up with the passenger of Means' vehicle, interviewed Will's patrons, searched a hotel room Plaintiff stayed in shortly after the shooting, obtained hotel surveillance footage, interviewed Plaintiff's girlfriend, executed a search warrant and conducted searches of Plaintiff's residence, questioned Plaintiff's grandparents, and provided information to the Cook County State's Attorney's Office.

58. Defendant Tolbert was aware that the passenger in Means' vehicle did not pick Plaintiff out of the photo line-up and based on her interview of a patron of Will's was aware of other potential suspects based on witness interviews, yet continued to take active steps to pursue Plaintiff as a suspect to the exclusion of other possible leads and suspects.

59. Lansing Defendant Rodriguez interviewed Will's patrons, searched a hotel room Plaintiff stayed in shortly after the shooting, obtained hotel surveillance footage, interviewed Plaintiff's girlfriend, executed a search warrant and conducted searches of Plaintiff's residence, and questioned Plaintiff's grandparents.

60. Defendant Rodriguez identifies several individuals at Will's for a birthday party with the designation "Lead #" but did neither Rodriguez nor other Defendant-Officers investigated these individuals any further and focused their investigation on Plaintiff to the exclusion of other potential leads and suspects.

61. Calumet Park Defendant Willoughby, along with Defendant Leyden interviewed Will's employees, including a security guard and bartender (or bartender's family member).

62. Riverdale Defendant Padron interviewed Will's patrons and reviewed security footage from a nearby business, including interviewing a patron (along with Defendant Hope) who described car club members acting aggressively in Will's and then witnessing the shooting and hearing someone say there was a hit out on Means.

63. Oak Forest Defendant Varkalis obtained and reviewed video footage from nearby businesses, drafted reports regarding his review of the footage, participated in questioning Plaintiff, obtained search warrants for Plaintiff's home, cell phone, snapchat account and vehicle, and executed a search warrant at Plaintiff's home and questioned his grandparents.

64. In his applications for search warrants to search Plaintiff's home and car, Defendant Varkalis misrepresented the evidence to support the SSMCTF team's theory that Plaintiff was the shooter, despite the lack of evidence implicating Plaintiff.

65. Posen Defendant Alexander conducted a neighborhood canvass, interviewed Will's patrons, reported and evaluated accounts of the shooting made by witnesses, reviewed and reported on responding Calumet City squad car's dash cam footage, and reviewed surveillance video from a nearby businesses.

66. Defendant Alexander interviewed a witness who stated that he was an eyewitness to the shooting, and provided a description of the shooter that did not match Plaintiff's appearance on the night of the shooting. The witness descried the shooter as wearing a gray vest. In his report, Defendant Alexander discredited that witness's account without documenting why the witness's account was unsupported or contradicted by the evidence.

67. Calumet City Defendant Zivkovich interviewed Will's patrons and a security guard, conducted a neighborhood canvass, interviewed the passenger of Means' vehicle and summarized the interview, interviewed Means' girlfriend, searched Means' vehicle, and obtained and reviewed video footage from a nearby business.

68. In his review of the videos, conducted with Defendant Leyden, Defendant Zivkovich focused solely on the movements of Plaintiff and his friends, despite the investigation being at an early stage and there being no evidence implicating Plaintiff as the shooter.

69. Defendant Daley was a sergeant at the Burnham police department at the time of the event and was notified of the shooting. Defendant Daley, based on available information, was a detective and took a lead role in the investigation.

70. Defendant Daley testified at the grand jury to obtain an indictment against Plaintiff for murder.

71. Prior to his grand jury testimony, Defendant Daley relayed information to the state's attorney to obtain an indictment against Plaintiff for murder, despite the lack of evidence that Plaintiff was the shooter.

72. In his conversation with state's attorney, Defendant Daley materially misrepresented the findings of the homicide investigation in order to implicate Plaintiff, and omitted information implicating other suspects or exculpating Plaintiff, in order to obtain an indictment against Plaintiff.

73. In his testimony to the grand jury, Defendant Daley materially misrepresented the evidence against Plaintiff.

74. Nathan Parks, an individual that was with Plaintiff that evening, was arrested and held in a police station in Gary, Indiana based on a hold initiated by the Defendant-Officers.

75. Despite the lack of evidence that Plaintiff had anything to do with this shooting, Defendants Daley (Burnham) and Nevarez (ISP) questioned Nathan Parks about Plaintiff's involvement with the shooting.

76. Nathan Parks repeatedly denied Plaintiff was involved in the shooting and denied that he saw Plaintiff with a gun.

77. Defendants Daley and Nevarez aggressively and coercively questioned Nathan Parks while he was in their custody over the period of two days while Parks pleaded to be released.

78. Defendants Daley and Nevarez detained, questioned, pressured and threatened Parks to say something to implicate Plaintiff in the shooting even though they knew there was no evidence that Plaintiff was involved in the shooting, and that Parks had no genuine information that Plaintiff was the shooter or otherwise involved.

79. Parks eventually made a false and coerced statement that implicated Plaintiff in the shooting as the result of the Defendants Daley and Nevarez's unlawful and unconstitutional interrogation.

80. Defendants Daley and Nevarez knew or should have known that this statement was not only coerced, but also false, and therefore made no effort to corroborate it.

81. Parks remained imprisoned in Gary, Indiana pursuant to the SSMCTF investigation and the request/order of one or more of the Defendant-Officers (including Defendant Daley) for four more days until he was transported by Defendant Daley, in police custody, to the Cook County courthouse to provide false testimony before the Grand Jury implicating Plaintiff.

82. After Parks testified falsely before the Grand Jury, Defendant Daley was waiting for Parks. Daley transported Parks to the south side of Chicago in police custody where he finally released Parks on 95th Street.

83. Each and every Defendant, as part of their duties and their involvement in the SSMCTF and the homicide investigation, drafted written reports and verbally reported to other members of the SSMCTF and to their supervising officers.

84. During the course of the investigation and as part of their role in the SSMCTF, Defendants regularly met and shared information and made decisions about the course of the investigation, including what leads to follow up on, what information to ignore or discount, and the decision to pursue Plaintiff as a suspect.

85. Defendants, individually and collectively, provided information – based on their written and verbal reports as well as the information shared in other ways during the investigation – to the Cook County State's Attorney's Office regarding the progress of the investigation and, at some point, to seek felony charges, including the charge of murder, against Plaintiff.

86. During the course of the investigation, Defendant Officers took steps to falsely implicate Plaintiff in the March 2, 2016, shooting.

87. These steps included decisions about what information to pursue and what information to ignore, what to include and how to characterize the information and evidence obtained in reports, and what information to share and materially misrepresenting the information and evidence obtained to the Cook County State's Attorney's Office, and falsely testifying at the grand jury.

88. Defendant-Officers knowingly, intentionally, jointly and by agreement, falsely implicated Plaintiff as being involved in the shooting, despite the lack of physical evidence, eyewitness evidence, and evidence of any kind implicating Plaintiff as the shooter.

89. Specifically, Defendant-Officers and other involved officers, after examining the crime scene, watching surveillance videos, interviewing numerous witnesses, and examining other physical evidence, purposely misrepresented facts, and ignored, omitted and undermined exculpatory evidence that exonerated Plaintiff and evidence that implicated other potential suspects.

90. No eyewitnesses identified Plaintiff as the shooter.

91. A young woman who was the passenger in Vincent Means' car described a possible suspect to investigators and participated in a photo line-up, yet did not identify Plaintiff as the shooter.

92. Despite the lack of evidence that Plaintiff had anything to do with this shooting, Defendant-Officers wrote false and misleading reports and gave false and misleading information to the Cook County State's Attorney's Office about the strength of evidence against Plaintiff in order to initiate and pursue criminal charges against him for murder.

93. Defendant-Officers did so knowing that there was no probable cause to bring charges against the Plaintiff.

94. On April 11, 2016, based on the Defendant-Officers' compromised investigation, false reports, false statements to the state's attorney, and false testimony, as well as the coerced testimony from Parks, Plaintiff was indicted on eight counts of first-degree murder.

95. The case was docketed in the Cook County Courthouse as *People of the State of Illinois v. Timothy Watkins*, case number 16CR0552201.

96. On March 4, 2016, based on the Defendant-Officers' knowingly false allegations and initiation of a warrant for his arrest, Plaintiff was arrested by the Lansing Police Department and transported to the custody of Defendant Daley at the Burnham Police Department.

97. Due to the serious nature of the charges, Plaintiff was unable to bond out during the pendency of the criminal case.

98. As a result, Plaintiff was imprisoned during the entire criminal prosecution and pretrial court proceedings.

99. Defendant-Officers did not have probable cause to bring criminal charges for murder against Plaintiff related to shooting of Vincent Means, yet they took steps to commence and continue his prosecution anyway.

100. On April 26, 2023, a bench trial began in the criminal case the Defendant-Officers initiated against Plaintiff.

101. At trial, Parks recanted his prior statement and testimony implicating Plaintiff.

102. Park's testimony at trial was consistent with the statements he repeatedly made to the Defendant-Officers when they began interrogating him, stating that he did not have any information and did not believe that Plaintiff was involved in the shooting.

103. On May 1, 2023, the criminal court judge found Plaintiff not guilty on all charges because it was abundantly clear that there was no evidence that Plaintiff was involved in the shooting of Vincent Means.

104. As a result of the Defendant-Officers' conduct, Plaintiff spent a total of 7 years imprisoned while the case was pending against him.

105. Defendant-Officers each personally participated in the unlawful conduct and acted jointly and in concert with their fellow members of the South Suburban Major Crimes Task

Force, and/or acquiesced to or failed to intervene to stop the unlawful conduct of the Defendant-Officers who wrongfully alleged, charged and commenced the prosecution of Plaintiff for murder.

106. As a direct and proximate result of the acts of the Defendants described above, Plaintiff suffered damages including physical pain and suffering, emotional distress, loss of freedom, loss of society, loss of a normal life, and pecuniary damages.

## COUNT I
### (42 U.S.C. § 1983 Fourth Amendment Claim for Unlawful Detention and Wrongful Prosecution)

107. Plaintiff re-alleges all preceding paragraphs as if fully set forth herein.

108. Defendant-Officers, knowing that probable cause did not exist, acted individually, jointly, and/or in a conspiracy, to cause Plaintiff to be arrested, detained, charged and prosecuted for multiple first degree murder charges, or failed to intervene knowing that Plaintiff was being arrested, detained, charged and prosecuted without probable cause, thereby violating Plaintiff's right to be free from unreasonable seizure guaranteed to him by the Fourth Amendment of the United States Constitution.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Defendant-Officers,

b) Award Plaintiff compensatory and punitive damages,

c) Award attorneys' fees and costs, and

d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT II
### (State Law Claim for Malicious Prosecution)

109. Plaintiff re-alleges all preceding paragraphs as if fully set forth herein.

110. Defendant-Officers acted individually, jointly, and/or in a conspiracy, to cause the commencement and/or continuation of the criminal prosecution against Plaintiff for first degree murder.

111. Defendant-Officers did so without probable cause or without a good faith basis, i.e. with malice.

112. Defendant-Officers had no probable cause to charge and cause the prosecution of Plaintiff for murder.

113. The charges were terminated in a manner favorable to Plaintiff when he was found not guilty at trial.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Defendant-Officers,

b) Award Plaintiff compensatory and punitive damages,

c) Award costs, and

d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT III
**(Claim for Indemnification pursuant to 745 ILCS 10/9-102)**

114. The acts of the Defendant-Officers described above were willful and/or wanton and committed in the scope of employment.

115. Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, the Defendant-Officers' employers, including the South Suburban Major Crimes Task Force, Village of Burnham, Village of Dolton, City of Oak Forest, City of Calumet Park, Village of Riverdale, City of Markham, City of Blue Island, Village of South Holland, Village of Lansing, Village of Posen, and City of Calumet City are liable for any judgments for damages and attorneys' fees and costs against the Defendant-Officers.

WHEREFORE, Plaintiff asks that this Honorable Court order the Defendant-Officers' employers, including the South Suburban Major Crimes Task Force, Village of Burnham, Village of Dolton, City of Oak Forest, City of Calumet Park, Village of Riverdale, City of Markham, City of Blue Island, Village of South Holland, Village of Lansing, Village of Posen, and City of Calumet City to indemnify the Defendant-Officers for any judgment entered in this case arising from their actions.

## COUNT IV
**(Malicious Prosecution Claim Against Defendant Employers - *Respondeat Superior*)**

116. The acts of the Defendant-Officers, as described above, were committed in the scope of employment.

117. As principals and employers, Defendants South Suburban Major Crimes Task Force, Village of Burnham, Village of Dolton, City of Oak Forest, City of Calumet Park, Village of Riverdale, City of Markham, City of Blue Island, Village of South Holland, Village of Lansing, Village of Posen, and City of Calumet City are liable for their agents' actions under the doctrine of *respondeat superior* for the state law claim of malicious prosecution.

118. Furthermore, these Defendant employers are liable for the actions of any as yet unidentified officers that are their employees or agents and who were involved in and/or caused the malicious prosecution of Plaintiff as alleged in Count II.

WHEREFORE, Plaintiff asks that this Honorable Court find Defendants South Suburban Major Crimes Task Force, Village of Burnham, Village of Dolton, City of Oak Forest, City of Calumet Park, Village of Riverdale, City of Markham, City of Blue Island, Village of South Holland, Village of Lansing, Village of Posen, and City of Calumet City liable for malicious prosecution based on the actions of their employees and agents, the Defendant-Officers and any other (yet to be named) officer-employees for any judgment entered on the state law claims in

this case arising from their actions.

## **JURY DEMAND**

119. Plaintiff demands a trial by jury on all claims.

                                                  Respectfully submitted,

                                                  s/Amanda S. Yarusso
*Counsel for Plaintiff Timothy Watkins*

Amanda S. Yarusso
1180 N Milwaukee Ave
Chicago IL 60642
773-510-6198
amanda.yarusso@gmail.com