UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TIMOTHY WATKINS, | ) |
|       Plaintiff, | ) |
| Vs. | ) Case No. 24 CV 3555 |
| SOUTH SUBURBAN MAJOR CRIMES TASK FORCE, ET. AL., | ) |
|       Defendants | ) |

### INVESTIGATOR CHUCK LEYDEN AND THE VILLAGE OF SOUTH HOLLAND'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE PLAINTIFF'S SECOND AMENDED COMPLAINT

**I.   Introduction**

On April 18, 2025, this Court entered a memorandum and opinion order granting Leyden and South Holland's motion to dismiss the First Amended Complaint. Like 20 other named defendants, Leyden argued Watkins failed to place him on notice of the claims asserted against him. This Court agreed, finding Watkins' Amended Complaint "is completely void of particularized wrong-doing against Leyden and 20 other Defendant-Officers".[1](Dkt. 168 at 7). This Court also concluded that it "cannot possibly infer that all 23 Defendant-Officers from twelve different police departments could have committed all the alleged actions." (Dkt. 168 at 7).

In his written opposition to the Defendants' motions, Watkins wrote that "he had some information about Defendant-Officers involved in based on report received in the criminal case discovery and a response to FOIA request, [but] the extent of their involvement is not known to Plaintiff and will need to be investigated in discovery." (Dkt. 138 at 9) Based on this representation, this Court granted Watkins' request for leave to file a Second Amended Complaint

---

[1] This Court determined that the sole allegation Watkins offered concerning specific officer's misconduct relates only to Defendants Daley and Nevarez.

and added that the amended pleading "should include any information currently available to Watkins concerning the Defendant-Officers' personal involvement in the events forming the basis of his claims." (Dkt. 168 at 8).

Precedent teaches that individual liability under Section 1983 "requires the defendants' personal involvement in the alleged constitutional violation." See *Perez vs. Fenoglio,* 792 F. 3d 768, 781 (7th Cir. 2015). Put differently, Watkins's allegations must demonstrate that the named defendant was "personally involved with particular deprivation alleged for that deprivation occurred at defendants' direction or with defendants' knowledge and consent..." *DuBose vs. Hallinan,* 2021 WL 492873 at *2 (N.D. Ill.), citing *Neely vs. Randel,* 2013 WL 3321451 at *3 (N.D. Ill. 2013).

Has Watkins sufficiently pled Leyden's personal involvement in the alleged constitutional violation? A review of the Second Amended Complaint demonstrates that the few allegations specifically directed to Leyden fail to raise an inference of wrongdoing. Since the Second Amended Complaint does not begin to surmount Rule 8's plausibility threshold, this Court should dismiss the Second Amended Complaint (as to Leyden and South Holland) with prejudice.

**II.     Watkins' Allegations**

As this court notes in its memorandum opinion and order, Watkins has invoked 42 U.S.C Sec. 1983 as well as Illinois State Law to sue 23 police officers, 11 municipalities, and the South Suburban Nature Crimes Task Force. (Dkt. 168 at 1.) Watkins names Leyden as a defendant in his Second Amended Complaint and identifies him as "employed as a police officer by the Village of South Holland, at the time of the events alleged in the Complaint." (Dkt. 174 at 20).

In his Second Amended Complaint, Watkins offers the following allegations:

23.     On March 2, 2016, Vincent Means was shot and killed while driving in his vehicle near Will's Sport's Bar ("Will's") in Burnham County, Illinois.

2

24. The same day, Burnham Police Department began a criminal investigation of the shooting.

25. The Burnham Police Department activated the South Suburban Major Crimes Task Force to assist in the Homicide Investigation.

30. Upon information and belief, one or more of the Defendant-Officers reported to or consulted with Defendants, Belos and Nomikos about focusing on charging and prosecuting Plaintiff early on in the investigation, despite the lack of evidence and probable cause, and to the exclusion of other leads and suspects.

31. Defendants, Belos and Nomikos agreed and ratified the decision to pursue charging and prosecuting Plaintiff despite the lack of evidence, and other Defendant Officers decisions to ignore or discount other leads, potential suspects and information that negated Plaintiff's involvement in the shooting.

32. Defendants Belos and Nomikos failed to intervene in the other Defendant Officers' actions to falsely implicate, charge and prosecute Plaintiff despite their ability to do so.

33. Defendants Belos and Nomikos, along with other Burnham police officers including defendants, Daley, Bolin, Bowen and respond to the scene of the shooting shortly after the shooting.

34. Defendant Bowen testified in the criminal trial where Plaintiff tried to murder.

35. Each of the defendant officers that responded to the scene involved in secure the scene and collecting evidence.

36. Each of the defendant officers that responded to the scene participated in the homicide investigation by supplying information regarding their observations and recording information that was included and/or should have been included and considered in the overall investigation and identification of any suspects.

37. Each of the defendants that responded to the scene had a duty to accurately collect and report evidence and relevant information regarding the shooting and homicide investigation.

38. All the named defendant officers took part in the investigation into the shooting of Vincent Means as part of the South Suburban Major Crimes Task Force.

39. From an early stage of the investigation, Defendant-Officers honed in on Plaintiff as their chosen suspect and focused their investigation by attempting to create

      evidence to support their theory rather than following the evidence where it lead to identify the true killer.

40. ISP Defendant Montes served as team leader and, upon information and belief, was aware of, involved in and directed all aspects of the investigation.

41. ISP Defendant T. Gainer served as assistant commander and, upon information and belief, was aware of, involved in and directed aspects of the investigation.

42. Defendants Montes and T. Gainer reviewed and signed off on every SSMCTF Investigative Report submitted by the defendant officers.

43. ISP Defendants, Nevarez, Montes, Ashe, T. Gainer and Messer interviewed patrons and employees of Will's, interviewed the passengers of Means' vehicle, performed neighborhood canvases for witnesses and possible surveillance footage, obtained and executed warrants to search Plaintiffs residence and other structures and vehicles, questioned his family members and friends, searched cellphones, and questioned or attempted to question Plaintiff.

Watkins devotes paragraph 49 to Defendants Delgadillo, Coleman and Hope, and Padron. According to Watkins these defendants interviewed Will's, patrons, plaintiff's sister and girlfriend, secured video footage and questioned Watkins' grandparents. (Dkt. 174 at 50-54).

Watkins, as he did in his original and amended complaints, he offers a series of allegations regarding his arrest, detention and prosecution that are directed to the main defendants as a group:

83. Each and every defendant, as part of the duties and involvement in the SSMCTF and the homicide investigation, drafted written reports and verbally reported to other members of SSMCTF and to their supervising officer.

84. During the course of the investigation as part of their role in the SSMCTF, defendants regularly met and shared information and made decisions about the course of the investigation, including what leads the follow up, what information to ignore discount, and the decision to pursue plaintiff as a suspect.

85. Defendants, individually and collectively, provided information – based on their written and verbal reports as well as information shared in other ways during the investigation – to the Cook County State Attorney's Office regarding the progress of the investigation and, at some point, to seek felony charges, including the charge of murder, against Plaintiff.

86. During the course of the investigation, the defendant officers took steps to falsely implicate Plaintiff in the March 2, 2016, shooting.

4

87. These steps included decisions about what information to pursue and what information to ignore, what to include and how to characterize information and evidence obtained in the reports, and what information to share, and materially misrepresenting the information and evidence obtained to the Cook County States Attorneys' Office, and falsely testifying at the grand jury.

88. Defendant-Officers knowingly, intentionally, jointly and by agreement, falsely implicated Plaintiff as being involved in the shooting, despite the lack of physical evidence, eye witness evidence, and evidence of any kind implicating Plaintiff as the shooter.

89. Specifically, Defendant-Officers and other involved officers, after examining the crime scene, watching surveillance videos, interviewing numerous witnesses, and examining other physical evidence, purposely misrepresented the facts and ignored, omitted and undermined exculpatory evidence that exonerated Plaintiff and evidence that implicated other potential suspects.

92. Despite the lack of evidence that Plaintiff had nothing to do with this shooting; Defendant-Officers wrote false and misleading reports and gave false and misleading information to the Cook County States Attorneys' Office about the strength of evidence against Plaintiff and/or initiate and pursue criminal charges against him for murder.

93. Defendant-Officers did so knowing there was no probable cause to bring charges against the Plaintiff.

94. On April 11, 2016 based on Defendant-Officers compromised investigation, false reports, false statements to the States Attorney, and false testimony, as well as coerced testimony from Parks, Plaintiff was indicted on eight counts of first-degree murder.

Watkins specifically mentions Leyden in paragraphs, 55, 56 and 61. :

55. South Holland Defendant Leyden interviewed Will's patrons, conducted a neighborhood canvas, interviewed Will's security guards, retrieved and reviewed footage from Burnham Cleaners in 14534 South Calhoun, reported his review of the footage, executed search warrant [sic] and conducted a search of Plaintiff's residence, and questioned Plaintiff's grandparents.

56. In his review of videos, conducted with Defendant's Zivkobich, Defendant Leyden focused on the movements of Plaintiff, as friends and their vehicles, despite the investigation being in an early stage and there being no evidence implicating Plaintiff as the shooter.

5

61. Calumet Park Defendant Willoughby, along with Defendant Leyden, interviewed Will's employees, including a security guard and bartender (bartenders, family members).

Watkins does not claim or even suggest that Leyden testified before a grand jury or testified at trial. He likewise, he does not allege that Leyden himself brought criminal charges against him signed a complaint, or otherwise participated in the prosecution.

Despite representing that he has "some information about the Defendant-Officers involvement based on information received in the criminal case and their response to FOIA", Watkins' Second Amended Complaint, like his original and Amended Complaint, fails to attribute any measure of particularized wrongdoing to Leyden.

### III.  Legal Standard

As the Supreme Court recognizes, Rule 8 does not require "detailed factual allegations" but "demands more than unadorned, the – Defendant – unlawfully – harmed me – accusation." *Ashcroft vs. Iqbal*, 556 U.S. 662, 678 (2009) (Quoting *Bell Atlantic Corp., vs. Twombly*, 550 U.S. 544, 555 (2000). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" *Twombly,* 550 U.S. at 570. While the district court may accept as true all factual allegations pled in the complaint, "that tenet is inapplicable to legal conclusions". *Iqbal,* 556 U.S. at 678.

A complaint has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. 678. A plaintiff must offer factual allegations sufficient to "raise the right to relief above the speculative level." *Bell Atlantic,* 550 U.S. at 555.

A complaint that fails to allege sufficient facts to state a claim on which relief may be granted must be dismissed. *Luebano vs. Walmart Stores, Inc.,* 722 F. 3d 1014, 1018 (7th Circuit 2013.).

**IV.　As to Leyden, Watkins Fails to Plausibly Allege a Constitutional Violation**

As the Supreme Court recognizes, the claim as facial plausibility "when the plaintiff pleads factual content but allows the Court to draw a reasonable inference that the Defendant is liable for misconduct alleged." *Iqbal,* 556 U.S. at 678. This means Watkins' allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic cited supra.*

He likewise fails, even in a general sense, to identify wrongful conduct Leyden allegedly committed. The only allegations directed Watkins, which are factual, rather than conclusory, are found at paragraphs 55, 56 and 61

> 55. South Holland Defendant Leyden interviewed Will's patrons, conducted a neighborhood canvass, interviewed Will's security guards, retrieved and reviewed footage from Burnham Cleaners and 14534 S. Calhoun, [sic] reported his review of the footage, executed search warrant [sic] and conducted searches of Plaintiff's residence, and questioned Plaintiff's grandparents.
>
> 56. In his review of the videos, conducted with Defendant Zivkovich, Defendant Leyden focused on the movements of Plaintiff, his friends and their vehicles, despite the investigation being at an early stage and there being no evidence implicating Plaintiff as the shooter.

The allegations listed above are insufficient to allow an inference of wrongful conduct. Plainly, Watkins is unable to allege any facts, which would permit a reasonable trier of fact to find Leyden participated in any alleged constitutional violation or related wrongdoing.

The conduct Watkins ascribes to Leyden, canvassing the neighborhood, interviewing security guards, retrieving and reviewing footage from various retail establishments, conducting searches and executing warrants does not, under any stretch of imagination, violate either the Constitution or state law. The same analysis applies to focusing on the movements of Watkins,

7

his friends and their vehicles. Leyden's participation in these activities at the "early stage" militates against the suggestion that his conduct violated the Fourth Amendment or caused the commencement and/or continuation of the criminal prosecution. Since this activity occurred "early on", Leyden would not have access to information, which suggested someone other than Watkins was involved in Weeks' killing. Watkins does not claim Leyden signed a complaint or urged the State's Attorney's Office to move forward with the prosecution.

Although the Second Amended Complaint comprises 118 paragraphs, Watkins fails to allege that Leyden committed any errors or wrongdoing with respect to the activities laid out in paragraphs 55, 56 and 61

To the extent he attributes any misconduct to Leyden, Watkins does so in the collective or group pleading allegations found at paragraphs 87-93, 96, 99 and 105. This Court previously found that allegations of this type fail to meet Rule 8's plausibility threshold as they fail to allege specific misconduct against Leyden. This means Watkins has failed to place Leyden on notice of any alleged misconduct, which violates the Fourth Amendment.

Lastly, because Watkins fails to state viable claims against Leyden, his claims for indemnification (Count III) and respondeat superior (Count IV) should likewise be dismissed.

## CONCLUSION

For the reasons stated above, Leyden and the Village of South Holland respectfully request this Court dismiss Counts I, II, III and IV of the Second Amended Complaint with prejudice.

Respectfully submitted,

By:_/s/ *Patrick Ruberry*_____
One of the attorneys for Investigator C. Leyden and Village of South Holland

Patrick J. Ruberry
**LITCHFIELD CAVO LLP**
303 W. Madison, Suite 300
Chicago, IL  60606
Phone:  (312) 781-6675
Fax:     (312) 781-6630
ARDC# 6188844
ruberry@litchfieldcavo.com